**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| _____ ) | | |
| IN RE LITERARY WORKS IN ELECTRONIC ) | Master Docket No. M-21-90 (GBD) | |
| DATABASES COPYRIGHT LITIGATION ) | (MDL # 1379) | |
| ) | | |
| _____ ) | | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL**
**OF REVISED SETTLEMENT**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................1

II.   SUMMARY OF THE LITIGATION ...............................................3

    A.    Proceedings From Inception To Approval Of Original Settlement ........................3

    B.    Proceedings Following Approval Of Original Settlement ......................................5

III.  MATERIAL TERMS OF THE REVISED PROPOSED SETTLEMENT ........................7

    A.    The Defense Group .....................................................................7

    B.    The Settlement Class...................................................................8

    C.    Settlement Payments...................................................................9

    D.    Representative Plaintiffs .............................................................13

        1.    Plaintiffs Representing The Category A/B Claims...................13

        2.    Plaintiffs Representing The Category C Claims.......................14

        3.    The Associational Plaintiffs...................................................14

    E.    Attorneys' Fees, Reimbursement Of Costs, And Special Awards For The Representative Plaintiffs ........................................................14

    F.    Costs Of Notice And Claims Administration .......................................15

    G.    Releases.................................................................................16

IV.   ARGUMENT ......................................................................................16

    A.    The Standard For Preliminary Approval...............................................16

    B.    The Settlement Is The Product Of Serious, Informed, Non Conclusive Negotiations Largely Mediated By An Experienced Neutral. ...............................18

    C.    The Settlement Does Not Improperly Grant Preferential Treatment To The Named Plaintiffs Or Any Segments Of The Class ...............................................20

        1.    The Revised Settlement Resolves The Concerns Identified By The Second Circuit With Respect To Category C Claims...............................20

        2.    Special Awards for Class Representatives.................................21

D.    The Settlement Does Not Provide Excessive Compensation for Plaintiffs' Counsel ............................................................................................................22

E.    The Settlement Has No Obvious Deficiencies And Falls Within The Range Of Possible Final Approval ........................................................................................22

V.    THE CLASS SHOULD BE CONDITIONALLY CERTIFIED FOR SETTLEMENT PURPOSES ........................................................................................................24

VI.    THE COURT SHOULD APPROVE THE PROPOSED FORMS AND METHODS OF NOTICE ........................................................................................................27

VII.    CONCLUSION ........................................................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997)................................................................................................26

*Arclightz & Films Pvt. Ltd. v. Video Palace Inc.*,
    No. 01 Civ. 10135 (SAS), 2003 U.S. Dist. LEXIS 18414 (S.D.N.Y. Oct. 14, 2003) .......24

*Danieli v. Int'l Bus. Machines Corp.*,
    No. 08 Civ. 3688 (SHS), 2009 U.S. Dist. LEXIS 106938 (S.D.N.Y. Nov. 16, 2009) ......20

*Dorn v. Eddington Sec., Inc.*,
    No. 08 Civ. 10271 (LTS), 2011 U.S. Dist. LEXIS 11931 (S.D.N.Y. Jan. 20, 2011) ........24

*In re Currency Conversion Fee Antitrust Litig.*,
    2006-2 Trade Cas. (CCH) ¶ 75,505,
    2006 U.S. Dist. LEXIS 81440 (S.D.N.Y. Nov. 8, 2006)..................................................18

*In re Giant Interactive Group, Inc. Sec. Litig.*,
    279 F.R.D. 151 (S.D.N.Y. 2011) ...................................................................................18

*In re IMAX Sec. Litig.*,
    283 F.R.D. 178 (S.D.N.Y. 2012) ...................................................................................25

*In re Initial Public Offering Sec. Litig.*,
    243 F.R.D. 79 (S.D.N.Y. 2007) .........................................................................17, 22, 26

*In re Literary Works in Elec. Databases Copyright Litig.*,
    654 F.3d 242 (2d Cir. 2011)......................................................................................6, 20

*In re Literary Works in Elec. Databases Copyright Litig.*,
    509 F.3d 116 (2d Cir. 2007)............................................................................................5

*In re Take Two Interactive Sec. Litig.*,
    No. 06 Civ. 803 (RJS), 2010 U.S. Dist. LEXIS 143837 (S.D.N.Y. June 29, 2010)..........25

*In re Traffic Executive Ass'n-Eastern R.R.s*,
    627 F.2d 631 (2d Cir. 1980)..........................................................................................17

*Jermyn v. Best Buy Stores, L. P.*,
    No. 08 Civ. 214 (CM), 2012 U.S. Dist. LEXIS 90289 (S.D.N.Y. June 27, 2012)............21

*McReynolds v. Richards-Cantave*,
    588 F.3d 790 (2d Cir. 2009)....................................................................................16, 18

FEDERAL CASES—CONTINUED                                                      Page(s)

*Morris v. Affinity Health Plan, Inc.*,
    859 F. Supp. 2d 611 (S.D.N.Y. 2012)..............................................................18

*New York Times Co. v. Tasini*,
    533 U.S. 483 (2001).......................................................................................5, 24

*New York Times Co. v. Tasini*,
    531 U.S. 978 (2000)...........................................................................................4

*Nieves v. Community Health Plan*,
    No. 08 Civ. 321 (VB) (PED), 2012 U.S. Dist. LEXIS 37720
    (S.D.N.Y. Feb. 24, 2012)..................................................................17, 18, 22, 25

*Palacio v. E\*Trade Fin. Corp.*,
    No. 10 Civ. 4030 (RJH) (DCF), 2012 U.S. Dist. LEXIS 41886
    (S.D.N.Y. Mar. 12, 2012)..................................................................................25

*Parker v. Jekyll & Hyde Ent. Holdings, L.L.C.*,
    No. 08 Civ. 7670 (BSJ) (JCF), 2010 U.S. Dist. LEXIS 12762
    (S.D.N.Y. Feb. 9, 2010) ...................................................................................21

*Reed Elsevier, Inc. v. Muchnick*,
    559 U.S. 154 (2010).......................................................................................6, 26

*Tasini v. New York Times Co.*,
    972 F. Supp. 804 (S.D.N.Y. 1997).....................................................................4

*Tasini v. New York Times Co.*,
    206 F.3d 161 (2d Cir. 1999)...............................................................................4

*Velez v. Novartis Pharms. Corp.*,
    No. 04 Civ. 09194 (CM), 2010 U.S. Dist. LEXIS 125945 (S.D.N.Y. Nov. 30, 2010) .....21

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)...........................................................................16, 18


STATUTES

17 U.S.C. § 201(c) ..............................................................................................4, 24

17 U.S.C. § 411 .......................................................................................................23

17 U.S.C. § 411(a) .................................................................................................5, 23

| | |
|---|---|
| **STATUTES—CONTINUED** | **Page(s)** |
| 17 U.S.C. § 412 | 24 |
| 17 U.S.C. § 504(b) | 23 |
| 17 U.S.C. § 504(c) | 24 |

**RULES**

| | |
|---|---|
| Fed. R. Civ. P. 23(a) | 17 |
| Fed. R. Civ. P. 23(a)(1) | 25 |
| Fed. R. Civ. P. 23(a)(2) | 25 |
| Fed. R. Civ. P. 23(a)(3) | 26 |
| Fed. R. Civ. P. 23(a)(4) | 6, 26 |
| Fed. R. Civ. P. 23(b) | 17 |
| Fed. R. Civ. P. 23(b)(3) | 25-28 |
| Fed. R. Civ. P. 23(c)(2)(B) | 26, 28, 29 |
| Fed. R. Civ. P. 23(e) | 18 |
| Fed. R. Civ. P. 23(e)(1) | 27, 29 |

**OTHER AUTHORITIES**

| | |
|---|---|
| Manual for Complex Litigation, Fourth § 21.632 (Fed. Judicial Center 2004) | 16, 17, 20, 22 |
| Manual for Complex Litigation, Fourth § 21.633 (Fed. Judicial Center 2004) | 16, 17 |
| 4 Herbert Newberg & Alba Conte, Newberg on Class Actions § 11.25 (4th ed. 2002) | 16 |

# I.  **INTRODUCTION**

Plaintiffs are pleased to submit a revised class settlement in this case, and ask the Court to grant it preliminary approval so that notice can be sent and final-approval proceedings conducted.  All parties but one, defendant Cengage Learning (formerly known as The Gale Group), have signed the settlement agreement.  Cengage is in bankruptcy proceedings, having filed for Chapter 11 in July 2013.  Plaintiffs expect that Cengage will receive approval from the bankruptcy court to enter into the agreement, and are therefore proceeding with this motion now.[1]

In August 2011, the Second Circuit vacated approval of the previous settlement, agreeing with the objectors that Category C claims (i.e., claims based on unregistered works) should have had separate representation in the settlement negotiations.  After the case was remanded to this Court, plaintiffs, defendants, and the objectors' counsel (acting on behalf of the Category C claims only) embarked on months of negotiations, seeking to reach a resolution that would be acceptable to all while addressing the concerns of the Second Circuit.  Their efforts have borne fruit in the form of the present settlement.

This settlement is based on the previous one, but has several key revisions.  Under the first settlement, defendants and certain non-party newspaper and magazine publishers would provide up to $18 million for settlement payments to claimants, costs of settlement administration and class notice, attorneys' fees and expenses, and special awards to the named plaintiffs.  Each claim was assigned to one of three categories, based on the U.S. Copyright Office registration status of the work.  A Category A work was one that was registered with the

---

[1] Class counsel have filed a class proof of claim in the Cengage bankruptcy case to protect the class's interests.  Counsel will withdraw the claim when Cengage enters into the settlement here.

U.S. Copyright Office (a) before an infringement had occurred or (b) within three months after first publication of the work. A Category B work was one that did not meet the Category A criteria, but was registered before December 31, 2002. All other works, including those that had never been registered, were in Category C. Category A claims received the highest level of compensation, followed by Category B, followed by Category C. Further, under a 2005 amendment to the prior settlement, valid Category B claims were upgraded to Category A if the work had been registered by the claimant before it was licensed to the Amazon.com or Highbeam Research databases.

In negotiating the present settlement, the parties took the first one as their starting point and addressed the Category C-related issues identified by the Second Circuit. The objectors' counsel vigorously advocated for Category C claimants and demanded more compensation for them. Defendants have agreed to eliminate the original $18 million settlement cap and to pay at least 14 percent more for Category C claims. In addition, the "C reduction" provision, under which Category C payments would be first to be reduced if the original $18 million cap were exceeded, was eliminated.

As did the previous settlement, the revised settlement provides a substantial benefit: millions of dollars in cash payments to class members who submitted valid claims pursuant to the previous settlement notice. Including the time relating to the original settlement, approximately three and a half years of mediated negotiations underlie the present deal. The revisions to the settlement were negotiated at arm's length by experienced counsel on three sides. The settlement falls within the range of possible final approval, meriting preliminary approval and notice to the class.

Plaintiffs now seek an order (1) granting preliminary approval of the revised proposed settlement; (2) granting conditional certification of the same settlement class as before, but now also conditionally certifying separate Category A/B and Category C subclasses; (3) approving the proposed class notices and methods of disseminating notice; and (4) scheduling a fairness hearing to determine whether the settlement should be granted final approval, and to determine an appropriate award of attorneys' fees and costs to plaintiffs' and the former objectors' respective counsel.

## II.     SUMMARY OF THE LITIGATION

### A.     Proceedings From Inception To Approval Of Original Settlement

This case involves the copyright relationship among freelance authors, print publications (*e.g.*, newspapers and magazines) and electronic databases (*e.g.*, LEXIS/NEXIS) with respect to the electronic delivery of literary content.  For years it was industry practice for freelance authors to sell their works to publications without a written contract.  It was customary that, for a fee paid to the author, the author granted the publisher the first right to publish the work.  Without a written contract there was no clear delineation of rights regarding the right of the publisher to further publish the freelancer's work, or to authorize others to do so, but prior to a 1976 revision of the Copyright Act it was generally thought the publisher had that right.  In the early 1990s, when electronic databases such as LEXIS/NEXIS entered the market, print publishers entered into license agreements authorizing the databases to copy and sell the full text of the publications, including articles written by freelance contributors.  The print publications typically did not obtain the freelance authors' express permission for this subsequent publication of their works in the electronic databases.

In 1993, six freelance authors filed a copyright infringement action against their print publishers and the electronic databases in which the plaintiffs' works appeared. The district court granted summary judgment for the defendants. *See Tasini v. New York Times Co.*, 972 F. Supp. 804 (S.D.N.Y. 1997). In 1999, the Second Circuit reversed and directed the entry of judgment for the plaintiffs. 206 F.3d 161 (2d Cir. 1999).

In 2000, three class actions were filed on behalf of freelance authors whose works were published in electronic databases without authorization: *The Authors Guild, Inc. v. Dialog Corp.*, No. 00 Civ. 6049, filed in the Southern District of New York; *Posner v. Gale Group, Inc.*, No. C-00-2913-MMC, filed in the Northern District of California; *Laney v. Dow Jones & Co.*, Civil No. 00-769-RRM, filed in the District of Delaware. *Posner* was voluntarily dismissed and refiled in the Southern District of New York as a related action to *Authors Guild*. In December 2000, the Judicial Panel on Multidistrict Litigation transferred *Laney* to the Southern District of New York for coordination or consolidation with *Authors Guild* and *Posner*. In August 2001, this Court consolidated these three cases for all pretrial purposes under the above caption and docket number. A fourth action filed in this District after the Panel issued its transfer order, *The Authors Guild, Inc. v. New York Times Co.*, No. 01 Civ. 6032, was coordinated with the consolidated cases, also under the above caption and docket number.

On November 6, 2000, the United States Supreme Court granted certiorari in the *Tasini* case. *See* 531 U.S. 978 (2000). On February 27, 2001, the Court stayed this litigation pending the Supreme Court's ruling in *Tasini*. The Supreme Court issued its opinion June 25, 2001. In summary, the Court held that section 201(c) of the 1976 Copyright Act did not grant publishers the right, in the absence of an agreement so providing, to republish the freelancers' work, or license others to do so, in the manner that was and is employed by databases. *See New York*

*Times Co. v. Tasini*, 533 U.S. 483, 487-88 (2001).  On July 19, 2001, this Court held an initial

scheduling conference and directed the parties to engage in mediation.  Settlement discussions

began in September 2001, and the parties retained Kenneth R. Feinberg as mediator.  From

November 2001 to March 2005, under Mr. Feinberg's auspices, the parties engaged in mediated

settlement negotiations more or less continuously, including many all-day, face-to-face sessions

in New York.  In the process, the parties exchanged substantial amounts of information relevant

to the issues in the case.  Ultimately, the parties reached a proposed class settlement.  The Court

granted preliminary settlement approval, and an extensive class notice and outreach program

began in March 2005.  Ten objectors represented by attorney Charles Chalmers opposed the

settlement on several grounds.  On September 27, 2005, the Court held a hearing on the issue of

final settlement approval, and heard extensive argument from plaintiffs, defendants, and the

objectors.  The next day, the Court entered an order and judgment granting final approval.

### B.        Proceedings Following Approval Of Original Settlement

On October 24, 2005, the objectors filed a notice of appeal.  In January 2007, after the

appeal had been fully briefed, the Second Circuit sua sponte asked the parties to brief the

question of whether any federal court had the power to approve a settlement resolving claims

based on unregistered copyrights, in light of 17 U.S.C. § 411(a) (stating that generally, "no civil

action for infringement of the copyright in any United States work shall be instituted until

preregistration or registration of the copyright claim has been made").  Plaintiffs, defendants, and

the objectors all argued that the Court had the power to do so.  In November 2007, however, the

Second Circuit held that this Court lacked such power, and vacated class certification and

settlement approval on that ground.  The Court of Appeals did not reach the merits of the

objectors' appeal.  *See* 509 F.3d 116 (2d Cir. 2007).

The Supreme Court granted certiorari.  In March 2010, the Supreme Court reversed the

Second Circuit's decision and remanded the case.  *See Reed Elsevier, Inc. v. Muchnick*, 559 U.S.

154 (2010).

The Second Circuit then analyzed the settlement and the objections pursued on appeal,

handing down its opinion in August 2011.  While rejecting the objectors' arguments regarding

certain matters, such as the future use of class member works permitted under the settlement, the

Court of Appeals agreed with their contention that the Category C claims required Category C

subclassing and separate representation in the settlement negotiations, and that representation

had therefore been inadequate under Rule 23(a)(4).  The Second Circuit vacated certification of

the settlement class and approval of the settlement, and remanded the case to this Court.  *See In

re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242 (2d Cir. 2011).  Two weeks

after the decision, plaintiffs and defendants filed petitions for rehearing.  The Second Circuit

denied the petitions in November 2011.

The mediator for the original settlement, Kenneth Feinberg, suggested that the parties

meet to explore the possibility of a revised settlement.  In January 2012, with Mr. Feinberg's

assistance, plaintiffs and defendants held an initial meeting to consider opening discussions

among themselves and the objectors' counsel, with an eye to reaching a revised settlement that

would pass muster under the Second Circuit's August 2011 opinion.  Those discussions ripened

into a three-sided negotiation, with the objectors' counsel advocating exclusively for Category C

claims.  The Second Circuit had suggested that having separate representation for each category

of work in settlement negotiations would be efficient and straightforward, but recognized that

some other solution might be more appropriate in the end.  *See* 654 F.3d at 257.  From the outset

of their negotiations on remand, the parties recognized that no objections to the treatment of

Categories A and B had been pursued on appeal.  Accordingly, it made more sense to have separate representation only for Category C than to multiply the representation of class members who have both A and B works.  After more than a year and a half of hard-fought negotiations, the parties and objectors reached the agreement described below.

### III.  MATERIAL TERMS OF THE REVISED PROPOSED SETTLEMENT

This section sets forth in summary form the material terms of the revised settlement.  As stated above, the revised settlement builds on the original settlement agreement, as amended by the Amendment To The Settlement Agreement previously executed by the parties and as to which a supplemental notice was sent to the class.  The Revised Settlement Agreement not only reflects changes to the original terms negotiated by the parties, but also incorporates the terms of the amendment.  For clarity, in the following discussion, plaintiffs note which terms were changed from those in the original settlement agreement (as amended) by prefacing discussion of those terms with the designation "Revised Terms."  Unless otherwise stated, the terms remain the same as in the original.

### A.    The Defense Group

Benefits under the proposed settlement will be provided by both Defendants and certain non-party print publishers.  Defendants are (1) current and former commercial electronic database operators The Dialog Corporation, now known as Dialog, LLC, Dow Jones & Company, Inc., Dow Jones Reuters Business Interactive, LLC, now known as Factiva, LLC, a wholly owned subsidiary of Dow Jones & Company, Inc., EBSCO Industries, Inc., The Gale Group Inc., now known as Cengage Learning, Inc., Knight-Ridder, Inc., predecessor in interest to The McClatchy Company, Knight Ridder Digital, now known as McClatchy Interactive West, Mediastream, Inc., Newsbank, Inc., ProQuest Company, now known as Voyager Learning

Company, ProQuest Information and Learning Company, now known as ProQuest Information and Learning, LLC, Reed Elsevier Inc., The Thomson Corporation, now known as The Thomson Reuters Corporation, and West Publishing Corporation d/b/a West Group; and (2) two newspaper publishers, The New York Times Company and The Copley Press, Inc. The database operators are referred to as the "Database Defendants."

Also, many newspaper and magazine publishers have agreed to participate in the settlement by contributing essential funding, as well as information concerning their freelance authors' works ("Participating Publishers"). A list of the Participating Publishers is attached to the Revised Settlement Agreement as Exhibit A. The Participating Publishers and Defendants are referred to collectively herein as the "Defense Group."

In addition, other publishers that supplied works to the Database Defendants and elect to pay claims under the Plan of Allocation (described in part III.C below) for Subject Works they first published will be released from claims pertaining to those Subject Works. Those publishers are referred to herein as "Supplemental Participating Publishers."

### B.   The Settlement Class

The class proposed for purposes of the revised settlement remains the same as the original settlement class:  all persons who own a copyright under the United States copyright laws in an English language literary work that, at any time after August 14, 1997, was reproduced, displayed, sold and/or distributed in an electronic format (*i.e.*, online, on CD-ROM, or in any other electronic format) by any Defense Group member, without the person's authorization. These works are referred to as the "Subject Works."

A person is a class member even if (a) his or her Subject Work was not registered with the U.S. Copyright Office; (b) his or her Subject Work was originally published outside the U.S.,

so long as the work was published in English and in a country that is a member of the Berne Convention; (c) the person signed a license agreement granting a publisher "retroactive electronic rights" to a Subject Work that had been previously electronically published without the person's permission;[2] or (d) the person authorized the New York Times Company to electronically publish his or her Subject Works pursuant to the company's "Restoration Request Website" or print advertisements shortly after June 25, 2001, when the Supreme Court ruled against the company in the *Tasini* case.

►      ***Revised Terms:***  The parties propose to divide the class into two subclasses for the revised settlement, in accordance with the Second Circuit's August 2011 opinion.  The Category A/B Subclass consists of all class members to the extent they own copyrights in Subject Works that fall into Category A or B, as described below.  The Category C Subclass consists of all class members to the extent they own copyrights in Category C Subject Works. Some class members belong to both subclasses.

### C.      <u>Settlement Payments</u>

Under the original settlement, the Defense Group and Supplemental Participating Publishers agreed to pay a minimum of $10 million and up to $18 million, to be applied to valid claims, Court-awarded attorneys' fees and expenses, and administrative and notice costs.  Class members who submitted timely, valid Proofs of Claim would be (and still are) eligible to receive settlement payments based on the following Plan of Allocation:

---

[2] The Subject Work is not covered, however, if the license agreement contained express language waiving or releasing all copyright infringement claims pertaining to previously written Subject Works, and the person did not register the previously written Subject Works with the U.S. Copyright Office.

**Category A Subject Works.**  For each Subject Work the class member registered with the U.S. Copyright Office (a) before any infringement after the Subject Work was first published, or (b) within three months after first publication of the work, the person will receive:

- $1,500 for each of the first fifteen Subject Works written for any one publisher;

- $1,200 for each of the second fifteen Subject Works written for that publisher; and

- $875 for each Subject Work written for that publisher after the first thirty.

**Category B Subject Works.**  If the class member registered the Subject Work before December 31, 2002, but after any infringement of the work and more than three months after the first publication of the Subject Work, the person will receive, per each such Subject Work, the greater of $150 or 12.5% of the original sale price of the Subject Work.

**Category C Subject Works.**  For all other Subject Works (including Subject Works that were never registered), the class member will receive, per Subject Work:

- $60 for each Subject Work originally sold for $3,000 or more;

- $50 for each Subject Work originally sold for $2,000 to $2,999;

- $40 for each Subject Work originally sold for $1,000 to $1,999;

- $25 for each Subject Work originally sold for $250 to $999;

- The greater of $5 or 10% of the original price of the Subject Work for works that originally sold for $249 or less.

**Reduced payments for older Subject Works.**  For Subject Works created before January 1, 1995, payments in **Categories B and C** above will be reduced based on the years in which the Subject Work was created, as follows:

- <u>Subject Works created in 1985-1994</u>:  a 5% reduction for each year beginning in 1994 and continuing through 1985, so that payments for Subject Works created in 1994 will be reduced by 5%; payments for Subject Works created in 1993 will be

reduced by 10%, and so on until works created in 1985 (payments reduced by 50%).

- Subject Works created in or before 1985: Payments reduced by 50%. Under no circumstances, however, will any reduction for older works reduce a settlement payment to less than $5.

**Rights with respect to future electronic use.** Settlement payments represent compensation both for past infringement and for the right to future electronic use of the Subject Works by the Defense Group and/or Supplemental Participating Publishers. Plaintiffs consider 65% of each settlement payment as compensation for past infringement, and 35% as compensation for future electronic rights. If class members chose not to grant future electronic rights in submitting their claims, they will receive 65% of the total settlement payment. The Defense Group and Supplemental Participating Publishers are responsible for removing from their databases all Subject Works as to which class members chose not to grant future rights.[3]

**Amazon/Highbeam amendment:** Under an amendment approved by the Court along with the rest of the previous settlement, and incorporated without change into the revised settlement, any claim that would otherwise be a valid Category B claim will be reclassified and paid as a Category A claim if the claimant registered copyright in the Subject Work prior to the licensing and delivery of that Subject Work, by any defendant, to Amazon.com or Highbeam (aka Highbeam Research). A schedule of the dates of availability has been delivered to the Claims Administrator. The amendment also explicitly recognizes the right of defendants and

---

[3] If a class member already signed a written agreement with a print publication granting electronic rights to the person's unregistered Subject Works (falling into Category C described above), the person has already granted a license for future use of those works. Such class members no longer have the option of withholding electronic rights, and are eligible to receive just 65% of the total settlement payment.

publishers to license and sublicense works as to which class members did not exercise their "takedown" rights under the settlement.

►     ***Revised Terms:*** Under the revised settlement, the claims to be processed and paid according to the Plan of Allocation, if valid, are those submitted during the several-month claim period that ended September 30, 2005 under the original settlement. (Late claims were and are considered timely if the submitting class members cited Hurricane Katrina as the reason for filing after the deadline.) Class members cannot submit new claims or revise previously submitted ones, but they will be given a second chance to opt out or object. Instead of committing to pay up to a certain ceiling, as under the original settlement, defendants will simply pay all such claims.

Category A and B claims will be paid in the amounts set forth in the original plan of allocation. Category C claims will be paid in amounts higher than originally agreed. ***First,*** Category C claimants will be allocated amounts 14 percent greater than those stated above. For example, instead of being allocated $40 for each Subject Work that originally sold for $1,000 to $1,999, claimants will be allocated $45.60. ***Second,*** each Category C claimant will be allocated a pro rata share of an additional $343,000 in cash being contributed by the Database Defendants under the revised settlement. ***Third,*** still more money may be available for Category C claimants depending on the dollar amount of disbursements related to settlement administration. In 2005, the Database Defendants deposited $5 million toward their payment obligations under the original settlement. $517,000 of earnings and interest on that deposit which accrued during the pendency of the appeal (called the "Initial Interest" in the Revised Settlement Agreement) has been earmarked by agreement for use, to the extent necessary, in the payment of certain administrative expenses. If there is a balance remaining after payment of the listed items,

additional money, possibly as much as $200,000 or more, will be allocated pro rata among all Category C claimants.

The revised settlement agreement also clarifies that for those syndicated works that are considered a single Subject Work under the settlement, the settlement payment will be based on the payment made by the publication that first published the work — not on the aggregate amount paid for the syndicated work by all publishers. The original settlement agreement was silent on how to calculate the settlement payment in these circumstances.

In addition, as stated above, the $18 million payout cap of the original settlement has been eliminated in the revised settlement. Accordingly, there is no longer the C-reduction term from the original settlement, which provided that if the payout ceiling were exceeded under certain circumstances, then claim payments would be reduced by the amount necessary to bring defendants' total exposure down to $18 million, starting with Category C claims, and then, if necessary, Category A and B claims would be reduced.

### D. Representative Plaintiffs

#### 1. Plaintiffs Representing The Category A/B Claims

The representative plaintiffs for the original settlement were Derrick Bell, Lynn Brenner, Michael Castleman, E.L. Doctorow, Tom Dunkel, Andrea Dworkin, Jay Feldman, James Gleick, Ronald Hayman, Robert Lacey, Ruth Laney, Paula McDonald, P/K Associates, Inc., Letty Cottin Pogrebin, Gerald Posner, Miriam Raftery, Ronald M. Schwartz, Mary Sherman, Donald Spoto, Robert E. Treuhaft and Jessica L. Treuhaft Trust, Robert Treuhaft (as Trustee), Robin Vaughan, Robley Wilson, and Marie Winn.[4]

---

[4] Mr. Bell and Ms. Brenner should have been included in the list of named plaintiffs in the original settlement agreement, but were inadvertently omitted.

► **Revised Terms:** In the previous settlement, the above named plaintiffs sought to represent the entire class, regardless of whether a class member held a Category A claim, a Category B claim, a Category C claim, or any combination thereof. For the revised settlement, they are proposed as representative plaintiffs for the Category A and B Subject Works, except for Derrick Bell, Andrea Dworkin, Ronald Hayman, and Robert Lacey. Mr. Bell passed away in October 2011. Ms. Dworkin passed away in August 2005. Mr. Hayman and Mr. Lacey have only Category C claims, and thus cannot represent a Category A/B subclass. Furthermore, the trustee for the plaintiff trust (Robert E. Treuhaft and Jessica L. Treuhaft Trust) has changed and is now Constance Romilly.

### 2. Plaintiffs Representing The Category C Claims

► **Revised Terms:** As stated above, there was no separate Category C representation in the original settlement. For the revised settlement, the following two objectors to the original settlement are proposed as representative plaintiffs for the Category C works: Christopher Goodrich and Judith Stacy.

### 3. The Associational Plaintiffs

The cases being settled were also brought by three authors' rights groups: The Authors Guild, the National Writers Union and the American Society of Journalists and Authors. These groups are referred to herein as the "Associational Plaintiffs." For the revised settlement, they continue to serve in the same capacity as under the original settlement.

### E. Attorneys' Fees, Reimbursement Of Costs, And Special Awards For The Representative Plaintiffs

The aggregate amount of requested attorneys' fees and costs remains unchanged from the original settlement. The original settlement contemplated that Plaintiffs' Lead Counsel, on

behalf of all class counsel, would apply for a total fee-and-cost award of $4.4 million, plus a $2,000 special award for each representative plaintiff.

►       ***Revised Terms:***  Under the revised settlement, Plaintiffs' Lead Counsel, on behalf of counsel for the Category A and B works, will apply for a total fee-and-cost award of approximately $3.3 million, plus a $2,000 special award for each of the nineteen Category A/B representative plaintiffs and the estates of Derrick Bell and Andrea Dworkin.  Counsel for the Category C works will apply for an "all-in" award of $600,000 for attorneys' fees, costs, and special awards to the two Category C representative plaintiffs and eight former objectors.  The Defense Group has agreed not to oppose these applications.

### F.       Costs Of Notice And Claims Administration

Defendants have already paid hundreds of thousands of dollars in claims administration costs, and provided publication notice valued at $1 million, in connection with the original settlement.  In response to the notice program, a multitude of class members timely submitted valid claims, which have been processed by the Claims Administrator.

For the revised settlement, further notice of the right to opt out will be given to the class by mail (or e-mail where feasible), publication, and posting on the websites of the Associational Plaintiffs.  Costs of mailed or e-mail notice and administration costs will be paid from the balance of the $5 million that defendants deposited in connection with the original settlement.  In addition, the Participating Publishers will run a summary notice in their publications and/or websites at their own expense.  The retail value of these publication services is expected to exceed $2 million.

### G.    Releases

The Defense Group and Supplemental Participating Publishers, and their respective affiliates, predecessors, successors, directors, officers, employees, agents, representatives and assigns, will be released from claims that were or could have been asserted in this litigation based on the Subject Works, including but not limited to all copyright infringement claims and claims based on the electronic reproduction, distribution, display, sale, or adaptation of the Subject Works to or by a member of the Defense Group or a Supplemental Participating Publisher.

## IV.    ARGUMENT

### A.    The Standard For Preliminary Approval

The Second Circuit has long recognized "the strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) (internal quotation marks omitted); *accord McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009).

"Review of a proposed class action settlement generally involves two hearings.  First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation."  Manual for Complex Litigation, Fourth ("MCL 4th"), § 21.632, at 320 (Fed. Judicial Center 2004) (footnote omitted).  If the settlement passes muster at the preliminary-approval stage, the court sets a formal fairness hearing to determine whether the settlement should be granted final approval, and notice of the settlement and hearing is given to the class. *Id.* § 21.633, at 321-22; *see also* 4 Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 11.25, at 38-39 (4th ed. 2002) (endorsing two-step process).

At the preliminary-approval stage, "[t]he judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms . . . ." MCL 4th § 21.632, at 321. The judge should review the settlement for concerns "such as unduly preferential treatment of class representatives or segments of the class, inadequate compensation or harms to the class, the need for subclasses, or excessive compensation for attorneys." *Id.* "Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible [final] approval, preliminary approval is granted." *Nieves v. Community Health Plan*, No. 08 Civ. 321 (VB) (PED), 2012 U.S. Dist. LEXIS 37720, at *12 (S.D.N.Y. Feb. 24, 2012) (internal quotation marks omitted); *accord In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007).

A settlement "falls within the range of possible approval" if there is a basis for believing that the more rigorous standard for final approval can be satisfied. In essence, a granting of preliminary approval constitutes "a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re Traffic Executive Ass'n-Eastern R.R.s*, 627 F.2d 631, 634 (2d Cir. 1980), *quoted in Nieves*, 2012 U.S. Dist. LEXIS 37720, at *12.

In addition, if no class certification is in effect at the time of the preliminary-approval hearing, "the judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)." MCL 4th § 21.632, at 321. "If there is a need for subclasses, the judge must define them and appoint counsel to represent them." *Id.* "Once the judge is satisfied as to the certifiability of the class and the results of the initial inquiry into the fairness, reasonableness, and adequacy of the

settlement, notice of a formal Rule 23(e) fairness hearing is given to the class members." *Id.* § 21.633, at 321.

**B.**   **The Settlement Is The Product Of Serious, Informed, Non-Conclusive Negotiations Largely Mediated By An Experienced Neutral.**

The first consideration in the preliminary-approval analysis is whether "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations." *Nieves*, 2012 U.S. Dist. LEXIS 37720, at *12 (internal quotation marks omitted). Indeed, even under the more rigorous standard governing final approval, where a settlement has been negotiated at arm's length by experienced, informed counsel, there is a presumption that it is fair and reasonable. *McReynolds*, 588 F.3d at 803; *Wal-Mart Stores*, 396 F.3d at 117.

A court may also consider whether the settlement was reached with the assistance of a judicial officer or other experienced neutral. *See In re Currency Conversion Fee Antitrust Litig.*, 2006-2 Trade Cas. (CCH) ¶ 75,505, 2006 U.S. Dist. LEXIS 81440, at *14-15 (S.D.N.Y. Nov. 8, 2006) (granting preliminary settlement approval) ("Here, the settlement negotiations were extensive, spanning a number of months and involving various mediation sessions with former Magistrate Judge Infante. . . . Judge Infante's participation in the negotiations substantiates the parties' claim that the negotiations took place at arm's length."); *see also Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 618 (S.D.N.Y. 2012) ("The involvement of Ruth D. Raisfeld, Esq., an experienced and well-known employment and class action mediator, is also a strong indicator of procedural fairness."); *In re Giant Interactive Group, Inc. Sec. Litig.*, 279 F.R.D. 151, 160 (S.D.N.Y. 2011) ("[C]ounsel have provided the Court significant evidence demonstrating that this settlement was the product of prolonged, arms-length negotiation, including as facilitated by a respected mediator.").

Here, the original settlement was negotiated by experienced, informed counsel over a period exceeding three years. Plaintiffs' counsel have substantial experience in prosecuting and resolving class actions and other complex litigation. Defense counsel are among the nation's leading intellectual-property attorneys. The negotiations took place at arm's length, were adversarial, and were mediated by Kenneth Feinberg, one of the nation's most prominent and respected mediators.[5] The material settlement terms were not reached before plaintiffs' counsel thoroughly investigated and researched the relevant facts and law, including reviewing substantial amounts of discovery produced by defendants and the Associational Plaintiffs. Plaintiffs also retained an economist expert who prepared a damages report for plaintiffs, and a copyright expert, who consulted with plaintiffs on relevant copyright issues.

After the Second Circuit vacated the settlement class certification and settlement approval, and the case was remanded to this Court, the parties and the objectors embarked on several months of negotiations in an attempt to reach a revised settlement. As with the negotiations for the original settlement, the three-way bargaining was at arm's length and hard-fought. The objectors argued vociferously on behalf of the Category C claims; plaintiffs held the line on the position of the Category As and Bs; and defendants ultimately agreed to pay more money to resolve the case.

---

[5] Among other distinctions, Mr. Feinberg was appointed by the United States Department of Justice to serve as the Special Master administering the September 11 Victim Compensation Fund.

**C.** **The Settlement Does Not Improperly Grant Preferential Treatment To The Named Plaintiffs Or Any Segments Of The Class.**

        **1.** **The Revised Settlement Resolves The Concerns Identified By The Second Circuit With Respect To Category C Claims.**

The settlement does not provide "unduly preferential treatment of class representatives or segments of the class," MCL 4th § 21.632, at 321. Each claim of a class member in a given category (i.e., Category A, Category B, Category C) will be paid according to the schedule for that category. Furthermore, the differences between the schedules reasonably reflect the relative strengths of the three categories of claims in litigation. *See Danieli v. Int'l Bus. Machines Corp.*, No. 08 Civ. 3688 (SHS), 2009 U.S. Dist. LEXIS 106938, at *13 (S.D.N.Y. Nov. 16, 2009) (granting preliminary settlement approval) ("As to the proposed plan of allocation, the Court finds that the proposed plan is rationally related to the relative strengths and weaknesses of the respective claims asserted.").

Furthermore, the terms of the revised settlement, and the circumstances of its negotiation, show that the parties squarely addressed the Second Circuit's concerns. As stated above, the Second Circuit held that those class members with only Category C claims had not been adequately represented in the settlement negotiations. The Court of Appeals reasoned that in the allocation of the settlement fund among claim categories, the interests of Category C claimants conflicted with those in Categories A and B, and thus the Category C claims required their own subclass and separate representation in the settlement negotiations. The Second Circuit also cited the C-reduction provision as a sign of inadequate representation. *See Literary Works*, 654 F.3d at 250-55.

Thus, in the negotiations resulting in the revised settlement, the objectors and their counsel represented the Category C claims exclusively. They sought and obtained more

compensation for those claims, in the form of (i) an increase in the amounts claimants will receive under the Category C payment schedule; and (ii) an additional sum to be distributed pro rata. Furthermore, the C-reduction provision has been eliminated in the revised settlement. In accordance with the Second Circuit's opinion, the parties propose certification of a Category C subclass for purposes of the settlement and appointment of two former objectors who hold only Category C claims as representatives of that subclass.

### 2. Special Awards For Class Representatives

Plaintiffs' Lead Counsel will apply for a special award of $2,000 to each of the nineteen Category A and B representative plaintiffs and the estates of former representative plaintiffs Derrick Bell and Andrea Dworkin, in recognition of their efforts in prosecuting the litigation on behalf of the class and obtaining the settlement. Category C counsel will likewise apply for special awards to the two Category C representative plaintiffs and eight former objectors in the total amount of $26,000, in recognition of their efforts to protect the interests of the Category C subclass. "Courts in this district and elsewhere routinely approve incentive awards of the type sought here." *Jermyn v. Best Buy Stores, L. P.*, No. 08 Civ. 214 (CM), 2012 U.S. Dist. LEXIS 90289, at *22 (S.D.N.Y. June 27, 2012); *see also Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, No. 08 Civ. 7670 (BSJ) (JCF), 2010 U.S. Dist. LEXIS 12762, at *4 (S.D.N.Y. Feb. 9, 2010) ("Enhancement awards for class representatives serve the dual functions of recognizing the risks incurred by named plaintiffs and compensating them for their additional efforts."); *Velez v. Novartis Pharms. Corp.*, No. 04 Civ. 09194 (CM), 2010 U.S. Dist. LEXIS 125945, at *68-69 (S.D.N.Y. Nov. 30, 2010) (collecting decisions approving incentive awards ranging from $50,000 to $300,000).

**D.  The Settlement Does Not Provide Excessive Compensation For Plaintiffs' Counsel.**

The settlement also does not provide "excessive compensation for attorneys," MCL 4th § 21.632, at 321.  As stated above, the original settlement contemplated that Plaintiffs' Lead Counsel would apply for a total fee-and-cost award of $4.4 million.  Given counsel's costs, the fee component of the requested award would have been approximately $3.8 million, less than their lodestar at that point.  Since then, counsel's lodestar has increased significantly because of appeal-related work, negotiation of the revised settlement, etc.  Nevertheless, under the revised settlement, they will apply for a considerably reduced total fee-and-cost award of approximately $3.3 million, leaving a fee of approximately $2.7 million after deduction of costs.

Category C subclass counsel will apply for a total award of $600,000 for attorneys' fees, costs, and special awards to the Category C representative plaintiffs.  Thus, the overall amount of attorneys' fees and costs sought by all plaintiffs' attorneys in the case has decreased since the original settlement ($3.9 million under the revised settlement versus $4.4 million under the original settlement)

**E.  The Settlement Has No Obvious Deficiencies And Falls Within The Range Of Possible Final Approval.**

The remaining considerations at the preliminary-approval stage are whether the settlement is free of obvious deficiencies and falls within the range of possible final approval. *Nieves*, 2012 U.S. Dist. LEXIS 37720, at *12; *Initial Public Offering*, 243 F.R.D. at 87.  The revised settlement here easily meets these criteria.

First and foremost, this settlement is an exceptional result for the class.  The class consists almost entirely of freelance authors who did not register their Subject Works with the U.S. Copyright Office, i.e., Category C works.  Generally, registration is a requirement for

standing to bring infringement actions under the Copyright Act. 17 U.S.C. § 411. Although plaintiffs have advanced colorable arguments in favor of certification of a copyright class where the class representatives have satisfied the registration requirement but not the absent class members, those arguments are as yet untested in the courts. There is a substantial risk that, if forced to litigate the infringement claims in this proceeding, absent class members would be found to lack standing and, as a result, would be unable to receive any legal redress for the copyright infringement on which these actions are based. *See Reed Elsevier*, 559 U.S. at 171 (holding that registration requirement of 17 U.S.C. § 411(a) did not deprive this Court of jurisdiction to approve class settlement that covered unregistered works, but noting that an open question remains as to whether the "registration requirement is a mandatory precondition to suit that . . . district courts may or should enforce *sua sponte* by dismissing copyright infringement claims involving unregistered works").

Second, as for the relief available under the Copyright Act to authors who have registered their works, those authors' actual damages will be difficult to prove, and could be insubstantial. Under the U.S. copyright laws, a successful plaintiff in an infringement action "is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b). In the mediated negotiations leading up to the original settlement, defendants argued that actual damages and profits attributable to the complained of infringement are insubstantial, as the Subject Works were published in the electronic databases not because of any merit-based selection or belief that the works would be a big "draw" for the databases, but because the works were contained in the collective work publications that the print publishers transferred to the databases in their entirety.

Third, although statutory damages are available under the Copyright Act, such damages are available only to plaintiffs who registered their work prior to the infringing act or within three months after the first publication of the work. 17 U.S.C. § 412. The parties reasonably believed that few class members will have met this standing requirement. As for those who are eligible to receive statutory damages, the Plan of Allocation provides substantial cash compensation for their Subject Works, and actual awards could have been far less. (See part III.C above.) The per-work payments these class members are eligible to receive are unquestionably sufficient compensation given the risk and delay of further litigation.[6]

## V. THE CLASS SHOULD BE CONDITIONALLY CERTIFIED FOR SETTLEMENT PURPOSES.

In a case where a class has not yet been certified for litigation purposes, "[p]rovisional settlement class certification and appointment of class counsel [at the preliminary-approval stage] have several practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, ensuring notification of all class members of the terms of the proposed Settlement Agreement, and setting the date and time of the final approval hearing." *Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271 (LTS), 2011 U.S. Dist. LEXIS 11931, at *3

---

[6] Statutory damages under the Copyright Act range from a minimum of $200 for the most innocent type of infringement to a maximum of $150,000 for the most willful. 17 U.S.C. § 504(c). There is a risk that willful infringement would not be found under the circumstances of this case. "To prove willfulness, plaintiffs must show that the infringer had actual or constructive knowledge that it was infringing the plaintiffs' copyrights or else acted in reckless disregard of the high probability that it was infringing plaintiffs' copyrights." *Arclightz & Films Pvt. Ltd. v. Video Palace Inc.*, No. 01 Civ. 10135 (SAS), 2003 U.S. Dist. LEXIS 18414, at *9 (S.D.N.Y. Oct. 14, 2003). Here, one of the key issues in the case – whether 17 U.S.C. § 201(c) afforded defendants rights that would have been a complete defense to infringement – was not decided until a divided Supreme Court resolved that issue in June 2001. *See Tasini*, 533 U.S. 483. The risk that willful infringement may not have been found here was heightened given the defendant databases' theretofore untested interpretation of section 201(c), and also given the contractual representations of copyright ownership and indemnities the content providers delivered to the databases.

(S.D.N.Y. Jan. 20, 2011). Thus, courts routinely grant conditional certification of a plaintiff class for settlement purposes. *See, e.g., In re IMAX Sec. Litig.*, 283 F.R.D. 178, 184 (S.D.N.Y. 2012) (settlement class conditionally certified at preliminary-approval stage); *Nieves*, 2012 U.S. Dist. LEXIS 37720, at *10 (same); *Palacio v. E*Trade Fin. Corp.*, No. 10 Civ. 4030 (RJH) (DCF), 2012 U.S. Dist. LEXIS 41886, at *4 (S.D.N.Y. Mar. 12, 2012) (same).

This certification is not final or binding, but is reviewed in connection with the final fairness hearing. Plaintiffs will then be required to establish on a more detailed basis that the settlement class satisfies the requirements of Rule 23 and, if so, the class certification will be made final if the settlement is approved. *See In re Take Two Interactive Sec. Litig.*, No. 06 Civ. 803 (RJS), 2010 U.S. Dist. LEXIS 143837, at *16 (S.D.N.Y. June 29, 2010) ("Courts often certify classes for settlement purposes, and it is not uncommon for courts to certify settlement classes on a preliminary basis, at the same time as the preliminary approval of the fairness of the settlement, solely for the purpose of settlement, deferring final certification of the class until after the fairness hearing.").

Plaintiffs here seek conditional certification under Rule 23(b)(3), i.e., certification of a class on an opt-out basis. The proposed settlement class numbers in the tens of thousands. *See* Fed. R. Civ. P. 23(a)(1) (numerosity). Many authors are members of the Associational Plaintiffs – The Authors Guild, the National Writers Union and the American Society of Journalists and Authors – which all endorse the settlement. As freelance authors, the class members all share the same interest in resolving such common questions as who owns the electronic rights to freelance works sold to print publications, whether defendants infringed the copyrights of the class members, whether such infringement was willful, and the appropriate measurement of damages under the Copyright Act. *See* Fed. R. Civ. P. 23(a)(2) (commonality). The claims of the named

plaintiffs are typical of those of the rest of the class. They have no interests antagonistic to those of the rest of the class with respect to seeking relief for defendants' conduct, and have retained competent, experienced counsel. *See* Fed. R. Civ. P. 23(a)(3)-(4) (typicality and adequacy). The questions common to the class predominate over any issues affecting only individual members. *See* Fed. R. Civ. P. 23(b)(3) (predominance of common issues).

Similarly, each of the proposed Category A/B and Category C subclasses has thousands of members, who all share the same interest in the allocation of settlement funds between the two subclasses. The allocation-related claims of the proposed representative plaintiffs for each subclass are typical of those of the rest of the subclass. The proposed representative plaintiffs for each subclass have no interests antagonistic to those of the rest of the subclass with respect to the allocation issue, and have retained competent, experienced counsel to represent the subclass. The allocation-related questions common to each subclass predominate over any questions affecting only individual members.

Furthermore, a class action is a superior means of fairly and efficiently resolving this dispute. *See* Fed. R. Civ. P. 23(b)(3)(A)-(D) (superiority). There is little interest among class members in individually controlling the prosecution of separate actions, as per-author damages are generally too low to justify the cost of such litigation. Furthermore, it is appropriate to concentrate litigation of the claims in this forum, as many of the Defense Group members are headquartered in this District. *See* Fed. R. Civ. P. 23(b)(3)(C).[7]

---

[7] In a settlement context, the manageability-of-trial issues under Rule 23(b)(3) need not be addressed. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial."); *Initial Public Offering*, 243 F.R.D. at 83 ("A settlement-only class must meet all the requirements of Federal Rule of Civil Procedure 23, with

Accordingly, the Court should conditionally certify the class and the Category A/B and Category C subclasses in connection with preliminary settlement approval.

## VI.     THE COURT SHOULD APPROVE THE PROPOSED FORMS AND METHODS OF NOTICE.

If a court grants preliminary approval of a proposed class action settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Where, as here, class certification is sought under Rule 23(b)(3) for purposes of the settlement, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

The proposed notice program here meets this standard, and comprises mailed, online, and published notice. A full notice, in the form attached to the Revised Settlement Agreement as Exhibit E, will be posted on the website that was established for the original settlement and that has been maintained and updated ever since: www.copyrightclassaction.com. A shorter individual notice, in the form attached to the Revised Settlement Agreement as Exhibit F, will be mailed or e-mailed to those class members for whom the Claims Administrator has names and postal or e-mail addresses, either because such class members (i) were identified from the records of the Associational Plaintiffs or the Participating Publishers; (ii) submitted a claim, objection, or exclusion request under the original settlement agreement; or (iii) provided their contact information for some other reason. In addition, the summary notice attached to the Revised Settlement Agreement as Exhibit G will be published by the Participating Publishers at their own expense in numerous publications and/or websites they own or control, as listed in

one important exception: because the case will never go to trial, the court need not consider the manageability of the proceedings should the case or cases proceed to trial.').

Exhibit I to the agreement. The settlement agreement requires the Participating Publishers to provide these publication services in an amount valued at no less than $1 million – and whose value will in fact exceed $2 million – constituting a significant additional benefit to the class. Furthermore, the home page of the websites of the Associational Plaintiffs will carry an announcement and hyperlink directing authors and journalists to the settlement website for important information about the revised settlement.

This extensive notice program is sufficient not only in method of dissemination, but also in content. With regard to content, Rule 23(c)(2)(B) says that notice to a class certified under Rule 23(b)(3) must state:

| | | |
|---|---|---|
| (i) | the nature of the action; | |
| (ii) | the definition of the class certified; | |
| (iii) | the class claims, issues, or defenses; | |
| (iv) | that a class member may enter an appearance through an attorney if the member so desires; | |
| (v) | that the court will exclude from the class any member who requests exclusion; | |
| (vi) | the time and manner for requesting exclusion; and | |
| (vii) | the binding effect of a class judgment on members under Rule 23(c)(3). | |

Fed. R. Civ. P. 23(c)(2)(B).

All of the above information is presented in both the proposed full notice and (in more abbreviated form) the notice for mailing. The notices also describe the proposed settlement and the settlement payments to class members, and set forth the date, time, and place of the final fairness hearing. Both the notice for mailing and the notice for publication advise class members to go to the settlement website and view the full notice posted there for more information. The

notice contents therefore satisfy the requirements of Rule 23(c)(2)(B). *See also* Fed. R Civ. P. 23(e)(1) ("The court must direct notice in a reasonable manner to all class members who would be bound by the [settlement] proposal.").

## VII.  <u>CONCLUSION</u>

For the foregoing reasons, plaintiffs respectfully request that the Court enter the accompanying proposed order granting preliminary approval of the settlement; conditionally certifying the settlement class and Category A/B and Category C subclasses; directing notice to the class; and scheduling the hearing on final settlement approval and the application for plaintiffs' attorneys' fees and expenses and special awards to the representative plaintiffs.

Respectfully submitted,

Dated:  November 22, 2013

/s/ Michael J. Boni
Michael J. Boni
Boni & Zack LLC
15 St. Asaphs Road
Bala Cynwyd, PA 19004

Diane S. Rice
Hosie Rice LLP
Transamerica Pyramid
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

A. J. De Bartolomeo
Girard Gibbs LLP
601 California Street, Suite 1400
San Francisco, CA 94108

Gary Fergus
Fergus, A Law Office
595 Market Street, Suite 2430
San Francisco, CA 94105

Category A/B Counsel

/s/ Charles Chalmers
_____
Charles Chalmers
Allegiance Litigation
769 Center Boulevard, Suite 134
Fairfax, CA 94930

Category C Counsel