IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____
                                        )
IN RE LITERARY WORKS IN ELECTRONIC      )      M.D.L. No. 1379
DATABASES COPYRIGHT LITIGATION          )
_____)

# Exhibit

# 1

**TO THE DECLARATION OF MICHAEL J. BONI IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY APPROVAL OF REVISED SETTLEMENT**

# (PART 1 of 2)

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| | ) | |
| IN RE LITERARY WORKS IN ELECTRONIC | ) | MDL No. 1379 |
| DATABASES COPYRIGHT LITIGATION | ) | |
| | ) | |

## REVISED SETTLEMENT AGREEMENT

WHEREAS, plaintiffs in the above captioned matter, individually and on behalf of the class defined below (the "Class"), have alleged that defendants The Dialog Corporation, now known as Dialog, LLC, Dow Jones & Company, Inc., Dow Jones Reuters Business Interactive, LLC, now known as Factiva, LLC, a wholly owned subsidiary of Dow Jones & Company, Inc., EBSCO Industries, Inc., The Gale Group Inc., now known as Cengage Learning, Inc., Knight-Ridder, Inc., predecessor-in-interest to The McClatchy Company, Knight Ridder Digital, now known as McClatchy Interactive West, Mediastream, Inc., Newsbank, Inc., The New York Times Company, ProQuest Company, now known as Voyager Learning Company, ProQuest Information and Learning Company, now known as ProQuest Information and Learning, LLC, Reed Elsevier Inc., The Thomson Corporation, now known as The Thomson Reuters Corporation, The Copley Press, Inc., and West Publishing Corporation d/b/a West Group have violated the copyright laws of the United States by reproducing, displaying, selling or distributing on electronic databases works owned by authors without the authors' permission; and

WHEREAS, defendants have denied all liability to plaintiffs and the Class and have not admitted any of the allegations of the complaints filed or lodged by plaintiffs, including without limitation the Consolidated Amended Class Action Complaint filed on September 26, 2001, and

the complaint filed in *The Authors Guild, et al v. The New York Times Co.*, No. 01 CV 6032 (S.D.N.Y.); and

WHEREAS, Class Counsel (defined below) have conducted a thorough investigation into the facts and issues raised in the Action (defined below); and

WHEREAS, Class Counsel, while continuing to believe that the claims asserted in the Action have substantial merit, have also weighed the benefits to be obtained under a possible settlement of the Action against the possible outcomes, risks, and delay of continued litigation, including the likelihood of appeals from rulings on the merits in favor of any party; and

WHEREAS, the Representative Plaintiffs (defined below) and the Defense Group (defined below), in consideration of all of the circumstances and after prolonged and adversarial arms' length settlement negotiations between counsel and with the assistance of mediator Kenneth R. Feinberg of Feinberg Rozen LLP, wish to settle and finally resolve all actual and potential claims arising out of or relating to the matters that have been or may be asserted in the Action; and

WHEREAS, in addition to the consideration paid by defendants, the publishers ("Participating Publishers") listed in Exhibit A hereto have agreed to contribute to the settlement funds that this settlement has achieved on behalf of plaintiffs and the Class and have provided information to identify potential class members eligible to make claims under this settlement. Defendants and the Participating Publishers shall be referred to herein collectively as the "Defense Group"; and

WHEREAS, additional publishers ("Preliminary Supplemental Participating Publishers") may contribute to the settlement funds that this settlement has achieved on behalf of plaintiffs and the Class; and

WHEREAS, the A/B Plaintiffs and A/B Counsel concluded in 2005 that a settlement with the Defense Group on the terms set forth in the initial settlement agreement (the "Initial Settlement Agreement") was fair, reasonable, adequate and in the best interests of plaintiffs and the Class in light of, among other things, the risks inherent in prosecuting the Action and the benefits obtained under the Initial Settlement Agreement; and

WHEREAS, the Defense Group, each member of which expressly denies all of the allegations made by plaintiffs or any liability whatsoever, had agreed to enter into the Initial Settlement Agreement to conclude finally and definitively all claims brought in the Action and to reduce further expense, inconvenience, and the distraction of burdensome and protracted litigation; and

WHEREAS, the Court approved the Initial Settlement Agreement as fair, reasonable and adequate on September 23, 2005, over the objections of class objectors ("Former Objectors"), through their counsel, Charles D. Chalmers ("Former Objectors' Counsel" or "C Counsel"); and

WHEREAS, the Court of Appeals for the Second Circuit initially ruled that the Court lacked jurisdiction to approve the Initial Settlement Agreement, a decision which was reversed and remanded for further proceedings by the United States Supreme Court in March 2010; and

WHEREAS, on August 17, 2011, the Court of Appeals for the Second Circuit vacated the Court's September 23, 2005 order and remanded for further proceedings consistent with its opinion; and

WHEREAS, the A/B Plaintiffs, A/B Counsel, C Plaintiffs, C Counsel, the Defense Group, the Former Objectors, and Former Objectors' Counsel have reached an agreement to finally resolve all actual and potential claims arising out of or relating to the matter, through revisions to the Initial Settlement Agreement, which they believe address the Second Circuit's August 17, 2011 ruling and render the Initial Settlement Agreement as revised herein (the "Revised Settlement Agreement") fair, reasonable, and adequate;

WHEREAS, the A/B Counsel and the C Counsel have entered into a Class Counsel Expense Sharing Agreement attached to this Revised Settlement Agreement as Exhibit C; and

WHEREAS, (a) the parties agree that the claims of plaintiffs against defendants should be certified as a class action for purposes of the settlement of such claims, and (b) the parties therefore stipulate to a class for settlement purposes only, as defined below,

NOW, THEREFORE, in consideration of the covenants and agreements set forth in this Settlement Agreement, it is agreed by and among the undersigned that the claims of plaintiffs and the Class shall be settled and compromised with the Defense Group, subject to approval of the Court as required by Rule 23(e) of the Federal Rules of Civil Procedure, on the following terms and conditions:

1.      <u>Definitions</u>.  As used in this Revised Settlement Agreement, the below terms are defined as follows:

a.      "A/B Counsel" means the law firms and lawyers representing the A/B Plaintiffs:  (a) Boni & Zack LLC; (b) Fergus, A Law Office; (c) Hosie Rice LLP; and (d) Girard Gibbs LLP.

b.      "A/B Plaintiffs" means the following individuals who will be proposed to the Court as representatives of the A/B Subclass:  Lynn Brenner, Michael Castleman, E. L. Doctorow, Tom Dunkel, Jay Feldman, James Gleick, Ruth Laney, Paula McDonald, P/K Associates, Inc., Letty Cottin Pogrebin, Gerald Posner, Miriam Raftery, Ronald M. Schwartz, Mary Sherman, Donald Spoto, Robert E. Treuhaft and Jessica L. Treuhaft Trust (through Constance Romilly, trustee), Robin Vaughan, Robley Wilson, and Marie Winn.

c.      "A/B Subclass" means a subclass consisting of all Class members to the extent of their copyright holdings in Category A or Category B Subject Works.

d.      "Action" means the following actions:  *In re Literary Works in Electronic Databases Copyright Litigation*, MDL No. 1379 (S.D.N.Y.); *The Authors Guild, Inc., et al., v. The Dialog Corp.*, et al., Dkt. No. 00 CV 6049 (S.D.N.Y.); *Posner, et al., v. The Gale Group Inc.*, et al., Dkt. No. 00-CV-7376 (S.D.N.Y.); *Laney, et al. v. Dow Jones & Co. Inc., et al.*, Dkt. No. 00-CV-769 RRM (D.Del.); and *The Authors Guild, Inc., et al. v. The New York Times Company*, Dkt. No. 01 CV 6032 (S.D.N.Y.).

e.      "Administration Costs" means the cost of (1) preparing and providing notice to the Class pursuant to the Class Notice Program (paragraph 7 below) or as otherwise ordered by the Court; (2) setting up and implementing the Claims Administration Program (paragraph 5 below); (3) the fees currently due and owing to the mediator; (4) any escrow fees paid to the Depository Bank and payments to an independent third party for services and expenses in connection with administration of the Settlement Funds, including the preparation and mailing of tax forms and tax returns; (5) providing notice of the Initial Settlement Agreement to the Class and administering that settlement, to the extent compensation for such work remains due and owing; and (6) all other costs necessary for the administration of the

settlement that are agreed to by Representative Plaintiffs and Database Defendants, through their counsel.

       f.    "Associational Plaintiffs" means The Authors Guild, the National Writers Union, and the American Society of Journalists and Authors.

       g.    "Category A Subject Works," "Category B Subject Works," and "Category C Subject Works" mean Subject Works that are eligible for benefits under Categories A, B and C of the Plan of Allocation, respectively.

       h.    "C Counsel" means the lawyer representing the C Plaintiffs, Charles D. Chalmers.

       i.    "C Plaintiffs" means the following individuals who will be proposed to the Court as representatives of the C Subclass: Christopher Goodrich and Judith Stacy.

       j.    "C Subclass" means a subclass consisting of all Class members to the extent of their copyright holdings in Category C Subject Works.

       k.    "Claimant" means a class member who has submitted a claim for an award from the settlement proceeds with respect to a Subject Work (defined in paragraph 1.m below).

       l.    "Claims Administrator" means The Garden City Group, Inc., who has been retained by A/B Counsel to administer the settlement, including but not limited to the provision of notice to the Class members, processing and assisting with class members' claims, and other administration of the Plan of Allocation (see paragraph 3 below).

       m.    "Class" is defined as follows for settlement purposes only: All persons who, individually or jointly, own a copyright under the United States copyright laws in an English language literary work that has been reproduced, displayed, adapted, licensed, sold

and/or distributed in any electronic or digital format, without the person's express authorization by a member of the Defense Group or any member's subsidiaries, affiliates, or licensees (a) at any time on or after August 15, 1997 (regardless of when the work first appeared in an electronic database) or (b) that remained in circulation after August 15, 1997, even if licensed prior thereto, including English language works qualifying for U. S. copyright protection under an international treaty (hereinafter "Subject Work" ).   Notwithstanding anything in the immediately preceding sentence to the contrary, a copyrighted work created prior to January 1, 1978, is a Subject Work only if it (a) has been electronically or digitally reproduced, displayed, adapted, licensed, sold and/or distributed by a Participating Publisher without the person's express authorization, and (b) is from a publication whose pre-1978 works have not been excluded from this settlement, as indicated on Exhibit A.   Included in the Class are all copyright owners of Subject Works who, after June 25, 2001, responded to The New York Times Company's Restoration Request website or print advertisements.

   n. "Class Counsel" means A/B Counsel and C Counsel collectively.

   o. "Database Defendants" means The Dialog Corporation, now known as Dialog LLC, Dow Jones & Co., Inc., Dow Jones Reuters Business Interactive, LLC, now known as Factiva, LLC, a wholly owned subsidiary of Dow Jones & Company, Inc., EBSCO Industries, Inc., The Gale Group, Inc., now known as Cengage Learning, Inc., Mediastream, Inc., Knight-Ridder, Inc., predecessor-in-interest to The McClatchy Company, Knight Ridder Digital, now known as McClatchy Interactive West, Newsbank, Inc., ProQuest Company (now known as Voyager Learning Company), ProQuest Information and Learning Company (now known as ProQuest Information and Learning, LLC), Reed Elsevier Inc., The Thomson Corporation, now

known as The Thomson Reuters Corporation, and West Publishing Corporation d/b/a West Group, and all their parents, predecessors, successors, subsidiaries, affiliates, and divisions.

      p.    "Depository Bank" means Wells Fargo, Philadelphia, Pennsylvania, designated by A/B Counsel to serve as custodial trustee and to administer the settlement funds pursuant to an escrow agreement with the Depository Bank.

      q.    "Effective Date" is the date upon which each and all of the following events shall have occurred: (i) the Court shall have certified the Class and approved this Revised Settlement Agreement in all respects, pursuant to Fed. R. Civ. P. 23; (ii) entry shall have been made of the final judgment of dismissal with prejudice as to the defendants against plaintiffs and/or all members of the Class who have not timely excluded themselves from the Class; and (iii) the time for any appeal from the final judgment of dismissal and the Court's approval of this Revised Settlement Agreement shall have expired, or, if appealed, the final judgment has been affirmed in its entirety by the court of last resort to which any such appeal has been taken and such affirmance has become no longer subject to further appeal or review. Neither Rule 60 of the Federal Rules of Civil Procedure nor the All Writs Act, 28 U. S. C. § 1651, shall be taken into consideration in calculating the above-stated time periods.

      r.    "Participating Publishers" means the publishers identified in Exhibit A hereto and any publishers that, within three business days of the date on which plaintiffs file their motion for preliminary settlement approval (pursuant to paragraph 6 below), agree – as have the publishers listed in Exhibit A – to contribute to the settlement funds that this settlement has achieved on behalf of plaintiffs and otherwise to participate in the settlement.

s.      "Plaintiffs' Counsel" means all attorneys and law firms appearing or who have appeared at any time for plaintiffs, Class members, or Former Objectors in the Action, including A/B Counsel and C Counsel.

t.      [Intentionally left blank]

u.      "Preliminary Supplemental Participating Publishers" are the publishers that supply literary works to any of the defendants, other than publishers who are already identified as Participating Publishers.  "Supplemental Participating Publishers" are all those Preliminary Supplemental Participating Publishers that are not de-listed pursuant to paragraph 2.d below.

v.      "Released Claims" means each and every claim of every Class member, whether arising under federal, state, or foreign law, that has been or could have been asserted in the Action against any member of the Defense Group, any Supplemental Participating Publisher, and all their past, present, and future parents, predecessors, subsidiaries, affiliates, and divisions, and all of their respective officers, directors, owners, partners, governors, employees, agents, nominees, successors, assigns, legal representatives and licensees (as if all Participating Publishers and Supplemental Participating Publishers had been named as defendants), with respect to any and all of the Subject Works, including but not limited to all claims arising out of the same facts as their claims of copyright infringement, past, present, or future, known or unknown, and all claims with respect to the electronic or microform reproduction, distribution, display, license, sale or adaptation of Subject Works to or by the Defense Group or Supplemental Participating Publishers; except, however, that (i) only claims for past infringement are hereby released with respect to works that class members elect to have removed or not restored under paragraph 4 below, (ii) only claims concerning Subject Works are being released, (iii) this

9

settlement provides that Subject Works that Class members do not elect to have removed or not restored under paragraph 4 below may be displayed electronically only in accordance with paragraph 10.b below, (iv) no claims shall be released against any Participating Publisher for pre-1978 works the publisher has excluded from this settlement (see Exhibit A); (v) no claims shall be released with respect to works that have not, on or prior to the "Release Cutoff Date," been reproduced, adapted, licensed, sold, distributed, and/or displayed  in any electronic or digital format by any Defense Group member, such Release Cutoff Date being May 31, 2005; (vi) no claims shall be released based on retaliation for participating in, objecting to or opting out of the settlement, or for exercising rights under paragraph 4.a below, and (vii) none of the claims of class members who timely exclude themselves from the Class shall be released or in any other way adversely affected by the Settlement.

w.     "Released Parties" means the individuals and entities as specified herein in paragraph 1.v, subject to paragraphs 2.d, 10.b and 10.d, against whom claims are released.

x.     "Representative Plaintiffs" means the A/B Plaintiffs and C Plaintiffs collectively.

y.     "Settlement Payment" means a cash distribution to a Claimant in accordance with paragraph 3 below.

2.     The Settlement Funds.

a.     Subject to the provisions of this Revised Settlement Agreement, the Defense Group shall pay a minimum of $10 million to the Class, $1 million of which has been contributed in the form of published summary notice provided in 2005 regarding the Initial Settlement Agreement.  Class members with valid claims will be eligible to receive Settlement

Payments based on the Plan of Allocation set forth below at paragraph 3 and in the Claims Administration Memorandum (Exhibit B).

    b.  Pursuant to the Initial Settlement Agreement, the Database Defendants have already deposited the amount of $5 million into an interest bearing escrow account (the "Initial Deposit") by wire transfer to the Depository Bank, which has been in Plaintiffs' custody and control since 2005.  As of December 31, 2012, the balance of the Initial Deposit, i.e., the Initial Deposit less authorized expenses plus accumulated interest, dividends, and realized appreciation thereon ("Initial Deposit Balance"), was $5,015,909.31, of which $517,000 shall be deemed the "Initial Interest."  Within ten days of the date of this Revised Settlement Agreement, the Database Defendants shall deposit the further amount of $343,500 into the same interest bearing escrow account, which amount, together with the Initial Interest, shall be deemed an "Additional Contribution" in the amount of $860,500.  The sum of (i) the Initial Deposit Balance and (ii) the Additional Contribution (collectively, the "Total Separate Contribution") shall continue to be held in escrow and to be administered by the Claims Administrator, Class Counsel, and the Depository Bank, pursuant to an escrow agreement approved by Class Counsel and the Defense Group.  Pursuant to the terms of the escrow agreement, upon the Effective Date, any and all rights of the Defense Group members, collectively and individually, to the Initial Deposit, the Initial Deposit Balance, the Total Separate Contribution, and any interest or income earned thereon shall cease to exist.  Consequently, upon the Effective Date, the terms of the escrow agreement will provide that the entire balance of the Total Separate Contribution remains in the sole control of Class Counsel who shall direct no disbursement or transfer without prior notice to and approval of counsel for the Defense Group, such approval not to be unreasonably withheld.

     c.     After all valid claims have been processed pursuant to the Claims Administration Memorandum, the Claims Administrator shall issue a final report by e-mail to A/B Counsel, C Counsel, and a designee for (i) the Defense Group, (ii) each publication claimed against, and (iii) each publisher of such publications to the extent such information is possessed by the Claims Administrator.  The final report shall include the amount due on a per claim and aggregate basis for valid claims against each member of the Defense Group and each of the Preliminary Supplemental Participating Publishers.  All such amounts will be due from the originating publisher within 60 days from the date the final report is emailed, by wire or check to an account at the Depository Bank.  No later than four weeks (28 days) after such amounts are due, the Depository Bank will notify Class Counsel and counsel for the Defense Group of all such amounts that remain unpaid and the Defense Group shall remit to the Depository Bank the sum of all outstanding unpaid amounts within ten days thereafter.  By operation of the provisions of this paragraph (2.c), the Defense Group shall be responsible for the full and final funding obligations to plaintiffs and the Class no later than 98 days after the date on which the Claims Administrator e-mails its final report to Class Counsel and counsel for the Defense Group.

     d.     Ninety days after publication of the Claims Administrator's Final Report, the Database Defendants shall deliver to Class Counsel a list of all the Preliminary Supplemental Participating Publishers who were presented with claims but failed to pay the amounts due as determined by the Database Defendants in their sole discretion, so long as any such amounts are not less than the amounts provided for in paragraph 3 below.  The non-cooperating publishers on that list will not be "Supplemental Participating Publishers" for purposes of the definition of "Supplemental Participating Publishers" above and the provisions of paragraph 10.d below, and such "de-listed" publishers will not be Released Parties under this agreement.

e.      The Total Separate Contribution, together with any additional payments as provided for in paragraph 2.c., and all accumulated interest, dividends, and realized appreciation thereon, shall hereinafter be referred to as the "Settlement Funds."  Except as otherwise provided in this Agreement, no disbursement or other use of any portion of the Settlement Funds shall be made without approval of the Court.

f.      The Settlement Funds are intended as, have been treated as, and shall continue to be, a separate escrow fund of moneys and shall qualify as a "qualified settlement fund" within the meaning of Treasury Regulation Section 1A68B-1.  In connection with the Initial Settlement Agreement, A/B Counsel or their designee (i) have been the "administrator" of the Settlement Funds within the meaning of Treasury Regulation Section 1.468B-2(k)(3); (ii) have applied to the Internal Revenue Service for an employer identification number on behalf of the Settlement Funds and have caused to be prepared on behalf of the Settlement Funds any and all required tax returns; and (iii) have filed such tax returns with all appropriate tax authorities and have caused any taxes shown due on such returns and payable by the Settlement Funds to be paid to the Internal Revenue Service or other tax authority on behalf of the Settlement Funds from the funds on deposit in the Settlement Funds.  Under this Revised Settlement Agreement, A/B Counsel or their designee shall do, cause to be done, or continue to do the acts described in the foregoing (i)-(iii), and shall do or cause to be done any and all other acts as may be reasonably required to cause the Settlement Funds to qualify and remain qualified as a "qualified settlement fund" as described above.

g.      Until such time after the Effective Date as the Settlement Funds are distributed to Class members consistent with the terms of this Revised Settlement Agreement and as otherwise ordered by the Court, the Settlement Funds shall be invested and reinvested by

Class Counsel in United States Treasury Bills, Notes or other obligations of the United States or its instrumentalities of no more than six (6) months duration, except that such portions of the Settlement Funds as may reasonably be needed to pay current Administration Costs, including expenses associated with providing notice of the settlement to the Class, payment of taxes arising with respect to income earned by the Settlement Funds (including without limitation the reasonable expenses of a tax attorney or consultant and mailing and distribution costs and expenses related to filing tax returns), may be held in the form of cash or money market instruments. All interest and gains earned on the Settlement Funds or any portion thereof shall become and remain a part thereof. No party shall be responsible for any losses, principal or otherwise, of the Settlement Funds.

      h.    Before the Court issues a final order approving this Revised Settlement Agreement, disbursements may be made for reasonable expenses actually incurred in providing notice of the Initial Settlement Agreement and this Revised Settlement Agreement to the Class, including the costs of printing or mailing notice, or retaining the Claims Administrator to carry out all responsibilities relating to providing such notice and administration from the Total Separate Contribution in a total amount not to exceed $500,000 without further order of the Court, and the amounts for incurred Administration Costs (including accrued-but-not-yet-paid expenses) shall not be refundable to the Defense Group in the event the Revised Settlement Agreement is disapproved, voided, or otherwise fails to become final. No other payments, disbursement, or transfers of any kind from the Settlement Funds, including Class Counsel's attorneys' fees and costs of litigation, shall be made prior to the Effective Date without leave of Court for good cause shown. The Defense Group shall have no responsibility for the administration, operation, investment or distribution of the Settlement Funds. The

Representative Plaintiffs shall make reasonable efforts to minimize expenditures from the Settlement Funds.

        i.    The Defense Group shall not have any responsibility to make any filings relating to the Settlement Funds, but Class Counsel shall keep counsel for the Defense Group currently advised of all payments therefrom, and the Defense Group shall have no responsibility to pay taxes, including interest and penalties due thereon, on income earned by the Settlement Funds.  In the event the Revised Settlement Agreement is not approved by the Court or is otherwise terminated, all Settlement Funds (less any Administration Costs incurred) shall be promptly returned to the Defense Group, provided that in such event the Defense Group shall be responsible for payment of all taxes on income earned on the Settlement Funds after the date of such return.

        3.    <u>Plan of Allocation</u>.  Plaintiffs will seek Court approval of a Plan of Allocation of the settlement proceeds to eligible Class members, as set forth in this paragraph 3.  The Plan of Allocation will provide for distribution from the Settlement Funds, after the payment of (i) court approved attorneys' fees and reimbursement of costs, (ii) court approved service awards to the Representative Plaintiffs (and the estates of now-deceased former representative plaintiffs) and Former Objectors, and (iii) Administration Costs.  A Settlement Payment shall be made to every Claimant who submitted a timely, valid proof of claim in accordance with the Initial Settlement Agreement, subject to the limitations set forth below.  No new claims will be accepted, and no additional works can be added to previously filed claims.  The Settlement Payments shall be made pursuant to the following schedule:

a. Category A Subject Works. For each Subject Work the Claimant properly registered as an individual work with the United States Copyright Office in time to be eligible for statutory damages under 17 U. S. C. § 412 (2), the Claimant will receive:

> $1,500 for the first fifteen Subject Works written for any one publisher;

> $1,200 for the second fifteen Subject Works written for that publisher; and

> $875 for all Subject Works written for that publisher after the first thirty Subject Works.

b. Category B Subject Works. For each Subject Work that the Claimant properly registered before December 31, 2002, but not in time to be eligible for statutory damages under 17 U. S. C. § 412 (2), the Claimant will receive, per Subject Work, the greater of $150 or 12.5% of the original sale price paid by the publisher of the Subject Work; except that any claim that would otherwise be a valid Category B claim shall be reclassified and paid as a Category A claim if the Claimant registered copyright in the Subject Work prior to the licensing and delivery of the Subject Work, by any defendant, to Amazon.com or Highbeam (aka Highbeam Research). A schedule of the dates of availability has been provided to the Claims Administrator and to Class Counsel.

c. Category C Subject Works. For all other Subject Works, the Claimant will receive, per Subject Work, an amount that is at least 14% larger than the amount provided for in the Initial Settlement Agreement as follows:

> The greater of $5.70 or 11.4% of the original price of the Subject Work (except for works sold for amounts over $249, as described below);

> $28.50 for Subject Works originally sold for $250 to $999;

> $45.60 for Subject Works originally sold for $1,000 to $1,999;

$57.00 for Subject Works originally sold for $2,000 to $2,999;

$68.40 for Subject Works originally sold for $3,000 or more.

In addition, $343,500 from the Total Separate Contribution shall be paid to and distributed among all valid Category C Claimants pro rata, i.e., in proportion to their respective valid Category C claim dollar amounts.   As described more fully in the Class Counsel Expense Sharing Agreement attached hereto as Exhibit C, the Total Separate Contribution less the foregoing $343,500 amount shall be applied to (i) Administration Costs and (ii) payment required under paragraph 9.   To the extent there is still a balance remaining from the Total Separate Contribution after payment of such amounts, then a pro rata payment and distribution from such balance shall be made to and among all valid Category C Claimants in accordance with Exhibit C.

d.      Reduced Payments. For Subject Works created before January 1, 1995, payments in Categories B and C above shall be reduced, to an amount no lower than $5.70 per Subject Work, based on the years in which the Subject Work was created as follows:

Subject Works created in 1995 or later:  no reduction;

Subject Works created in 1985-1994:  a 5% reduction for each year beginning in 1994 and continuing through 1985, *i.e.* payments for Subject Works created in 1994 will be reduced to 95%, payments for Subject Works created in 1993 will be reduced to 90%, and so on until 1985;

Subject Works created before 1985 will receive a 50% reduction.

e.      Each Settlement Payment is further subject to paragraph 4 below.

f.       Any copyrighted work and each version, revision, or variant thereof prepared without material additional editing, revision, or composition by the Claimant shall be considered a single Subject Work for which the Claimant (or Claimants who claim joint

ownership) has only one claim payable in the first instance by the originating publisher, regardless of whether the work was published in more than one newspaper or periodical or database; provided, however, that a revision or variant prepared by the Claimant for which the Claimant received an additional payment by a publisher shall be considered an additional work, entitling the Claimant to submit an additional claim.

   g.  The Defense Group and Supplemental Participating Publishers will not, with respect to claims for Category A and Category B Subject Works, for purposes of this Agreement only, enforce retroactive licenses (as defined below) against any Subject Works that were registered prior to the dates these licenses were acquired.  For purposes of this Revised Settlement Agreement, a retroactive license is a license to a Subject Work acquired without monetary consideration after the date of publication other than a license obtained as part of the agreement to acquire the Subject Work in question ("Retroactive License").   Further, the Defense Group and Supplemental Participating Publishers will not, with respect to claims for Category C Subject Works, enforce Retroactive Licenses the form of which any publisher first used on or after April 14, 2003. In addition, The New York Times Company will not, for purposes of this Settlement Agreement, with respect to claims for Category A, Category B and Category C works, enforce any licenses, waivers, releases or any other concessions obtained from Class members through their participation in The New York Times Restoration Request web site.

   h.  For purposes of calculating the original price paid for works that were not paid for in U.S. dollars, the currency that was originally paid will be converted by the Claims Administrator to its U.S. dollar equivalent in order to determine the amount to be paid to claimants.  The conversion calculation shall be based on the Federal Reserve Bank's exchange

rate on the date the Settlement Agreement is executed, published on its website at http://www.federalreserve.gov/releases/h10/Hist/.

      i.    Notwithstanding anything in paragraphs 3 and 4, no Settlement Payment check to any Claimant shall be for less than $5.70.

    4.    <u>Continuing Use of Subject Works</u>.

      a.    Any Claimant (other than Claimants of Category C Subject Works that are the subject of Retroactive Licenses) was, in connection with the Initial Settlement Agreement, able to advise that he or she wanted the Defense Group and Supplemental Participating Publishers to remove from publicly accessible non-image-based electronic databases (or, if the work has been previously removed, not to restore) Subject Works whose copyright he or she owns. Any Claimant who exercised this right shall receive as his or her Settlement Payment for such Subject Work 65% of the amount that he or she would otherwise have been entitled to receive pursuant to paragraph 3. The Defense Group and/or Supplemental Participating Publishers will thereupon remove (or not restore) the specified Subject Works from their respective non-image-based databases. In the case of image-based electronic databases, for purposes of this settlement only, the obligation to remove shall be satisfied by disabling the functionality that allows the individual article record to be returned apart from the full context of the original print publication.

      b.    To the extent that any Claimant did not exercise the right provided for in paragraph 4.a above, any member of the Defense Group and any Supplemental Participating Publisher may, should it choose to do so and without further liability or obligation, restore to accessibility those Subject Works (and only those Subject Works) previously taken down, or continue the electronic distribution and use of those Subject Works presently available. The

continued use and/or restoration provided for in this paragraph is not a transfer of ownership to the Subject Work, and nothing in this settlement shall operate to transfer any ownership interests in any Subject Works that are the subject of this Revised Settlement Agreement to any member of the Defense Group, Supplemental Participating Publisher or any other person or entity. Subject to paragraph 10.b below, the continued use and/or restoration provided for in this paragraph permits the Defense Group and Supplemental Participating Publishers to continue to use the Subject Works for editorial or commercial purposes on a non-exclusive basis. It is considered by plaintiffs to constitute a non-exclusive license for future database use, and is valued by plaintiffs as 35% of the full amount per Subject Work under the Plan of Allocation; and it is considered by the Defense Group to be a compromise and restatement of preexisting non-exclusive rights obtained through oral or implied-in-fact agreements and provision for the expenditures occasioned by takedown or incomplete restoration.

c.     In the case of all Subject Works that a claimant asked to be removed (or not restored) under paragraph 4.a above, each member of the Defense Group and each Supplemental Participating Publisher, respectively, has been and continues to be responsible for the prompt removal of such Subject Works from all of its own public databases, web sites, or transmission feeds on which those works appear, after the provision to it of such requests. If any such work has not been removed, the Claimant or his or her representative may, in addition to all other available remedies, seek an Order of the Court requiring its immediate removal. If the Claimant or his or her representative makes such a motion for the reasons set forth in this paragraph against any Defense Group member or Supplemental Participating Publisher, and if the motion is granted, then the Defense Group member or Supplemental Participating Publisher

hereby agrees to pay the claimant's reasonable attorneys fees and costs incurred in the prosecution of the motion.

      d.    The procedures set forth in this paragraph 4 apply only with respect to Subject Works and only for purposes of this Revised Settlement.  Nothing in this Revised Settlement Agreement is intended to reflect any position on any question whatever that may arise in future litigation, including without limitation litigation concerning (a) works other than Subject Works, or (b) litigation by persons who exclude themselves from the Class.  No party to the litigation or to this Revised Settlement Agreement, including without limitation plaintiffs and class members, Former Objectors, defendants, Participating Publishers, and Supplemental Participating Publishers, may use the fact of this Revised Settlement or any provision or language contained in this Revised Settlement Agreement in connection with the prosecution or defense of any future copyright infringement or other claim, except for a claim relating to the interpretation, enforcement, or application of this Revised Settlement Agreement or claims relating to Subject Works.

    5.    <u>Claims Administration Program</u>.

      a.    The parties are agreed that the claims administration program provided for in the Initial Settlement Agreement, approved by the Court, was well-noticed to the Class, robust, and successful in generating extensive claims from Class members.  The claims submitted in response to the Initial Settlement Agreement shall be deemed the claims submitted in connection with the Revised Settlement Agreement.  Only Class members who submitted a valid, timely Proof of Claim under the Initial Settlement Agreement are eligible to receive a Settlement Payment.  The Proof of Claim required claimants, to the best of their ability, to provide the information specified in the Claims Administration Memorandum, and all works

claimed were to be listed on a single Proof of Claim.  Pursuant to the Claims Administration Memorandum, the Defense Group will have the burden of proving the invalidity of any claims. Claims will be assessed for validity in accordance with the procedures and standards set forth in the Claims Administration Memorandum.

        b.     No person will have any claim against the Representative Plaintiffs, the Associational Plaintiffs, the Former Objectors, Plaintiffs' Counsel (including Class Counsel), the Claims Administrator or other agent designated by A/B Counsel, or any member of the Defense Group or any Supplemental Participating Publisher and each of their respective past, present, and future parents, predecessors, subsidiaries, affiliates, and divisions, and all of their respective officers, directors, owners, partners, governors, employees, agents, nominees, successors, assigns, legal representatives, and licensees, for actions taken in good faith or Settlement Payments or other disbursements from the Settlement Funds made substantially in accordance with this Revised Settlement Agreement, the Plan of Allocation, the Claims Administration Memorandum or further orders of the Court.  This Revised Settlement Agreement is not intended to, nor shall it in any way be construed or interpreted to, create or support any cause of action or any claim for damages or injunctive relief against any Representative Plaintiff, Associational Plaintiff, Plaintiffs' Counsel (including Class Counsel), the Claims Administrator or other agent designated by Class Counsel, the Former Objectors or their counsel, any member of the Defense Group or their counsel, or any third party.

        6.    <u>Preliminary Settlement Approval</u>.  No later than 20 days after the execution of this Revised Settlement Agreement, unless otherwise extended by written agreement of the parties hereto, plaintiffs shall submit to the Court a motion for preliminary approval of the

Revised Settlement Agreement, together with a Proposed Order For Preliminary Settlement Approval, substantially in a form attached to this Revised Settlement Agreement as Exhibit D:

    a.      Preliminarily approving this Revised Settlement Agreement;

    b.      Certifying the Class, the A/B Subclass, and the C Subclass;

    c.      Requiring appropriate notice to be given to the Class within 30 days of the entry of the Order for Preliminary Settlement Approval in a form and manner found by the Court to be sufficient to satisfy the requirements of Fed. R. Civ. P. 23 and federal constitutional due process, which notice shall be in a form acceptable to the parties;

    d.      Scheduling new dates for Class members to request exclusion from the Class, or object to the Revised Settlement Agreement and for a hearing on final approval of the Revised Settlement Agreement;

    e.      Reserving jurisdiction as to each party to the settlement over the effectuation of the Revised Settlement Agreement for all purposes, including enforcement of the terms hereof and resolving any disputes that may arise (except as provided for in the Claims Administration Memorandum); and

    f.      Providing that, pending a hearing on final approval of the settlement, all discovery and other proceedings in the Action are stayed.  Plaintiffs shall request that a hearing (in person or telephonic) on its motion for preliminary approval of this Revised Settlement Agreement be held within 15 days after the date the motion is filed.

    7.      <u>Class Notice Program</u>.   In connection with the motion filed pursuant to paragraph 6 above, Class Counsel will submit to the Court, on notice to and approval by counsel for the Database Defendants, such approval not to be unreasonably withheld, a proposed Notice

of Revised Class Action Settlement ("Full Notice"), Mailed Notice, and Summary Notice of Revised Class Action Settlement ("Summary Notice"), substantially in the forms attached hereto as Exhibits E, F, and G, respectively. The parties agree that the notice provided in accordance with the Initial Settlement Agreement was well-calculated and successfully implemented so as to comply with Federal Rule of Civil Procedure 23 and due process, and which was approved by this Court as such. In view of the broad, comprehensive scope of that initial notice to all potential members of the Class provided pursuant to the Initial Settlement Agreement, which resulted in thousands of claims submitted during the claims period, Class Counsel will recommend to the Court that the further class notice program consist of the following: (a) sending the Mailed Notice by email or first class mail, postage prepaid, to those Class members for whom the Claims Administrator has names and email or postal addresses (because such Class members (i) were identified from the records of the Associational Plaintiffs or the Participating Publishers; (ii) submitted a claim, objection, or exclusion request under the Initial Settlement Agreement; or (iii) provided their contact information for some other reason), at the last known email or postal address identified in those records; (b) posting and displaying the Full Notice on the website that was established for the Initial Settlement Agreement, and that has been maintained ever since, at www.copyrightclassaction.com; (c) displaying – until the Final Approval Hearing – on the home page of the websites of the Associational Plaintiffs an announcement stating, in substance, "ATTENTION AUTHORS AND JOURNALISTS. CLICK HERE FOR IMPORTANT INFORMATION ABOUT THE REVISED SETTLEMENT OF THE IN RE LITERARY WORKS IN ELECTRONIC DATABASES COPYRIGHT LITIGATION," which announcement will provide a hyperlink to www.copyrightclassaction.com, a web site dedicated to the settlement of this Action and on which the Notice, this Revised Settlement

Agreement, and other relevant information (the language of which shall be agreed to by the parties) will be displayed; and (d) the Participating Publishers shall provide the Publication Notice, which will have a retail value of no less than $1 million, through online or print publication of the Summary Notice in publications and/or websites they own or control, and which are listed in Exhibit I hereto. The cost of the Additional Publication Notice shall not be considered an Administrative Cost and shall instead be borne by the Participating Publishers. The Full Notice, among other things, shall:

a.      Describe the nature of the litigation, who comprises the Class and Sub-Classes, and the terms of the Revised Settlement;

b.      Explain that a hearing will be held to determine the reasonableness, adequacy and fairness of this Revised Settlement Agreement, including whether the Court should approve it, and identify the date, time and location of the hearing and explain that the date and time may change without further notice;

c.      Provide that any Class member who objects to the approval of this Revised Settlement Agreement or to the final judgment to be entered in this litigation, may (but is not required to) appear at the hearing and show cause why the proposed settlement should not be approved as fair, reasonable, and adequate and why a final judgment should not be entered;

d.      Require that the objection of any such Class member must be made in writing and that such objection, together with any supporting papers, must be filed with the Court within such time prior to the hearing as the Court may direct;

e.      Advise Class members wishing to exclude themselves from the Class as to the date and manner by which to do so; and

f.      Apprise Class members that a list of "de-listed" Preliminary Supplemental Participating Publishers will be posted on the web site www.copyrightclassaction.com so that the Class can be advised of which publishers are not Released Parties.

8.      <u>Final Fairness Hearing</u>.   If the Court preliminarily approves this Revised Settlement Agreement, plaintiffs shall, at least one week prior to the hearing for final approval of this Revised Settlement Agreement set by the Court, or some other time as the Court may order, submit to the Court a motion for entry of an order of dismissal and final judgment substantially in the form attached to this Revised Settlement Agreement as Exhibit H, which in substance shall:

a.      Approve finally this Revised Settlement Agreement and its terms as being a fair, reasonable and adequate settlement as to the Class members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and direct its consummation according to its terms;

b.      Direct that each of the lawsuits in the Action be dismissed with prejudice and without costs;

c.      Forever discharge and release all of the Released Parties from all of the Released Claims and enjoin class members from further filing, commencing, prosecuting, intervening in, or pursuing any Released Claim;

d.      Provide that the Released Parties shall have no other obligations to plaintiffs or the Class other than in the ordinary course of business;

e.      Determine that the Revised Settlement Agreement and any proceedings taken pursuant thereto are not, and should not in any event be:   (i) offered or received as

26

evidence of a presumption, concession, or admission by any Released Party of any fact or matter; or (ii) offered or received as evidence of a presumption, concession or admission of any liability, fault, wrongdoing or other dereliction of duty, or (except with written consent of the Released Party) in any way referred to for any reason in the Action, or in any other civil, criminal, bankruptcy, or administrative action or proceeding; provided, however, that reference may be made to this Revised Settlement Agreement in such proceedings as may be necessary to effectuate the provisions of this Revised Settlement Agreement for all purposes, including enforcement of the terms hereof and resolving any disputes that may arise;

f.      Reserve jurisdiction as to each party over the effectuation of the Revised Settlement Agreement.

g.      Determine under Fed. R. Civ. P. 23 that there is no just reason for delay and direct that the judgment of dismissal with prejudice as to defendants shall be final; and

h.      Contain any other provisions mandated by this Revised Settlement Agreement.

9.     <u>Attorneys' Fees and Costs</u>.

a.      A/B Counsel, on behalf of all Plaintiffs' Counsel other than C Counsel, will apply to the Court for (i) payment from the Settlement Funds of attorneys' fees in the amount of $2,697,635.14; (ii) reimbursement of their reasonable costs from inception to June 10, 2005 in the amount of $520,847.29; (iii) reimbursement of their reasonable costs incurred after June 10, 2005 in the amount of at least $87,727.33; and (iv) a special award to the nineteen A/B Plaintiffs and the estates of deceased former representative plaintiffs Derrick Bell and Andrea Dworkin, in the amount of $2,000 each. To the extent that A/B Counsel have incurred additional costs in this

matter after June 10, 2005 that are not included in the item (iii) figure above, they will also apply for reimbursement of those costs and reduce the amount of their attorneys' fee application, *i.e.,* the item (i) figure above, by the amount of those costs.  All Class Counsel request approval of additional notice and claims administration expenses of $762,790.24 as described in Exhibit C hereto.

b.     C Counsel will separately apply to the Court for payment from the Settlement Funds in the total amount of $600,000, to be applied to (i) his attorneys' fees and reasonable costs; and (ii) special awards to the two C Plaintiffs and eight Former Objectors in the total amount of $26,000.

c.     A/B Counsel and C Counsel will request that any attorneys' fees and expenses awarded to them, and any special awards approved for the A/B Plaintiffs, C Plaintiffs, and Former Objectors, be paid on the Effective Date.  A/B Counsel shall thereafter allocate their Court-approved attorneys' fees among themselves and other Plaintiffs' Counsel (other than C Counsel) in a manner in which A/B Counsel in good faith believe reflects the contribution of such counsel to the prosecution and settlement of the Action.

d.     No member of the Defense Group and no one on behalf of any member of the Defense Group shall object to or take any steps to undermine the applications for attorneys' fees and reasonable costs and special awards described above, so long as such applications are consistent with the terms set forth in this paragraph 9.

10.     <u>Releases</u>.

a.     Without further action by anyone, and subject to paragraph 8, as of the Effective Date, any and all Class members, on behalf of themselves, their heirs, executors, administrators, predecessors, successors, assigns, any person claiming by or through any Class

members and any person representing any or all Class members, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and the Order of Dismissal and Final Judgment shall have, fully, finally, and forever released, relinquished, settled, and discharged all Released Claims against each and every one of the Released Parties.

      b.     Notwithstanding anything in paragraph 1.v above, the releases shall be construed to provide, and this Revised Settlement Agreement provides, that a Subject Work which Class members do not elect to have removed or not restored under paragraph 4 above may, under the authority provided by this Revised Settlement and the releases and Orders provided in connection therewith, be electronically reproduced, distributed, displayed, licensed, sold, or adapted by (but only by) each Defense Group Member or Supplemental Participating Publisher that allegedly infringed the Subject Work.  These rights shall be irrevocable, worldwide, and continuing, and may be fully transferred to and acquired by those successors and assigns that have purchased or otherwise acquired ownership or control (i) of any Defense Group Member or Supplemental Participating Publisher (or of any substantial segment of the business thereof), or (ii) of all or substantially all of the assets of any such person, or with respect to any publication or publications.  The parties to this revised Settlement Agreement expressly confirm that the license conveyed by this Settlement Agreement permits each Participating and Supplemental Participating Publisher and their permitted licensees (including the Database Defendants), successors and assigns, to electronically license on a nonexclusive basis any Subject Work that was allegedly infringed by it to any person, including parties who are not Defense Group Members, and to grant such licensees a right to sublicense.

c.      Each and every Class member, through plaintiffs as representatives of the Class, covenants and agrees that, as of the Effective Date, he or she shall be forever barred from instituting, maintaining, prosecuting, or assigning any and all Released Claims against, or collecting on any and all Released Claims, from any of the Released Parties (including without limitation by participating in, or recovering as a result of, any class or representative action, whether under federal, state, or other law, in which any Released Claims have been or may be brought).

d.      No claims hereunder shall be released against Preliminary Supplemental Participating Publishers who are "de-listed" under paragraph 2.d above.  The Full Notice and Mailed Notice shall apprise class members that a list of "de-listed" publishers will be posted on the web site www.copyrightclassaction.com so that the Class will be advised of which publishers are not Released Parties.

e.      The Defense Group and Supplemental Participating Publishers, for good and valuable consideration, and upon the Effective Date without further action, shall release and discharge plaintiffs and every member of the Class who has not timely excluded himself or herself, and each of their respective successors, assigns or legal representatives, and Class Counsel, from any and all claims, demands, causes of action, or obligations of any kind based upon the commencement and prosecution of this Action, including costs, expenses and attorneys' fees.

f.      With respect to any and all Released Claims, and upon the Effective Date without further action, for good and valuable consideration, plaintiffs and all Class members shall be deemed to have, and by operation of the Order of Dismissal and Final Judgment contemplated by this Revised Settlement Agreement shall have, fully, finally, and forever

expressly waived and relinquished, to the fullest extent permitted by law, any and all provisions, rights, and benefits of section 1542 of the California Civil Code and any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States or principle of common law that is similar, comparable, equivalent or identical to section 1542 of the California Civil Code, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Each member of the Class may hereafter discover facts other than or different from those that he or she knows or believes to be true with respect to the Released Claims, but each member of the Class hereby expressly waives and fully, finally, and forever settles and releases, upon the Revised Settlement Agreement becoming final, any known or unknown, suspected or unsuspected, contingent or non-contingent claim that is a Released Claim, without regard to the subsequent discovery or existence of such different or additional facts.

11.    <u>Miscellaneous Provisions</u>.

a.    This Revised Settlement Agreement, if not terminated pursuant to any provision hereof, shall become final on the Effective Date.

b.    Upon final approval of this Revised Settlement Agreement, plaintiffs and/or members of the Class who have not timely excluded themselves from the Class shall be deemed to have stipulated that the Action shall be dismissed with prejudice.

c.    After the Effective Date, the Settlement Funds, less any disbursements for taxes, Administration Costs, and any Court awarded attorneys' fees, reimbursement of expenses, and special awards, shall be distributed to members of the Class in accordance with the Plan of

Allocation as approved by the Court. Except as otherwise provided herein, disbursements for the costs and expenses of distribution and administration of the Settlement Funds shall be made solely from the Settlement Funds with approval of the Court.

       d.     Subject to the Defense Group's approval, which approval shall not be unreasonably withheld, A/B Counsel are authorized to retain the Claims Administrator, whose fees and expenses, to the extent not already paid, will be paid from the Settlement Funds in accordance with this Revised Settlement Agreement, to carry out the responsibilities relating to providing notice to the Class, administering the Settlement Funds and administering the settlement.

       e.     In the event (i) the Court denies the motion for preliminary or final approval of, or otherwise refuses to approve, this Revised Settlement Agreement or any material part of it, (ii) the final judgment contemplated by paragraph 8 hereof is not entered, (iii) the final judgment contemplated by paragraph 8 shall have been vacated, reversed or modified upon appeal, (iv) the Revised Settlement Agreement is rescinded, withdrawn, or otherwise terminated in accordance with its terms, or (v) this Revised Settlement Agreement does not become final for any reason, this Revised Settlement Agreement shall be null and void (except for the provisions in ¶ 11.f, which will remain in full force and effect) and of no force and effect (unless all parties agree to proceed with the settlement as modified by the Court, in which event the parties shall proceed with the Revised Settlement Agreement as modified), and this Revised Settlement Agreement and all negotiations and proceedings connected with it shall be without prejudice to the rights of any party hereto, shall not be deemed or construed to be an admission by any party of any fact or matter, and shall not be used in any way in these actions or in any other action or proceedings).

f.      In the event this Revised Settlement Agreement is terminated or rescinded, or does not become final for any reason, within 5 business days of notice by the Defense Group of such event the Settlement Funds, including interest, shall be disbursed to the Defense Group by wire transfer into an account designated by the Defense Group, less the portion attributable to them of any Court-approved costs, including Administration Costs, including a reasonable reserve for accrued but not yet paid Administration Costs.  For purposes of the disbursement made pursuant to this paragraph, no deduction shall be made for Class Counsel's fees or for any costs other than those costs already incurred for providing class notice and administering the settlement, as provided for in this Revised Settlement Agreement.  Class Counsel shall not be responsible for any losses, principal or otherwise, of the Settlement Funds.

g.      In addition to the effect of any final judgment entered in these actions, upon approval by the Court, this Revised Settlement Agreement, including but not limited to the Releases provided herein, (i) shall inure to the benefit of and be binding upon the Defense Group and each member of the Defense Group's past, present, and future parents, predecessors, subsidiaries, affiliates, and divisions, and all of their respective officers, directors, owners, partners, governors, employees, agents, nominees, successors, assigns and legal representatives, and (ii) shall also inure to the benefit of and be binding upon plaintiffs and each and every member of the Class who does not timely exclude himself or herself.

h.      All notices, demands, and requests as specified herein shall be in writing and shall be sent by electronic mail and overnight courier to Class Counsel and each of the undersigned counsel for the Defense Group.

i.     Within 30 days after the Effective Date, Class Counsel will destroy all copies of all documents produced to plaintiffs by any member of the Defense Group.   Class Counsel will notify the Defense Group in writing that such destruction has occurred.

j.     The parties may execute this Revised Settlement Agreement in counterparts, and the execution of the counterparts shall have the same effect as if all parties have signed the same instrument.   Any executed counterpart of this Revised Settlement Agreement may be transmitted by facsimile or electronic mail, and such counterpart shall be treated as an original.   The fully executed Settlement Agreement that is filed with the Court, however, will contain all original signature pages.   All of the Exhibits to the Revised Settlement Agreement are material and integral parts hereof.

k.     Other than as expressly set forth in this Revised Settlement Agreement, no party to the Revised Settlement Agreement has relied on any representation of another party in entering into the Revised Settlement Agreement.

l.     No provision of this Revised Settlement Agreement may be modified except by a writing signed by all parties hereto and subject to Court approval.

m.     Subject to the Claims Administration Memorandum (Exhibit B hereto), the parties agree that this Court shall retain jurisdiction over the interpretation and implementation of this Revised Settlement Agreement.

n.     This Revised Settlement Agreement may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit, or other proceeding that may be instituted, prosecuted, maintained, or attempted in breach of this Revised Settlement Agreement.

      o.     This Revised Settlement Agreement and its Exhibits contain an entire, complete, and integrated statement of each and every term and provision agreed to by and among the parties; set forth the entire agreement among the parties with respect to its subject matter; and are not subject to any condition not provided for herein, except that Exhibit A may be modified up until three days prior to the date on which plaintiffs file their motion for preliminary settlement approval, for the sole purpose of adding publishers to the list of Participating Publishers.  In all other respects, this Revised Settlement Agreement may not be changed, altered or amended other than by a written agreement signed by the party sought to be charged with such change, alteration, or amendment.  The parties shall not, in any proceeding or otherwise, use or refer to any parol evidence with regard to the interpretation or meaning of this Revised Settlement Agreement.

      p.     The parties agree that no party is a "prevailing party" in the Action.

      q.     This Revised Settlement Agreement is not intended to, and does not, create any rights or benefits for any party that is de-listed by the Database Defendants pursuant to paragraph 2.d of this Revised Settlement Agreement.

     IN WITNESS THEREOF, the parties hereto have caused this Revised Settlement Agreement to be executed by their duly authorized representatives as of the 13th day of November, 2013.

Michael J. Boni
Boni & Zack LLC
15 St. Asaphs Road
Bala Cynwyd, PA  19004

Diane S. Rice
Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111


A. J. De Bartolomeo
Girard Gibbs LLP
601 California Street, Suite 1400
San Francisco, CA 94108

A/B Counsel


Charles Chalmers
Allegiance Litigation
769 Central Blvd., Suite 134
Fairfax, California 94930

C Counsel (Formerly Objectors' Counsel)


The Dialog Corporation, now known as Dialog,
LLC
By:
Title:

Diane S. Rice
Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

*A. J. De Bartolomeo* *by AKL*

A. J. De Bartolomeo
Girard Gibbs LLP
601 California Street, Suite 1400
San Francisco, CA 94108

A/B Counsel

Charles Chalmers
Allegiance Litigation
769 Central Blvd., Suite 134
Fairfax, California 94930

C Counsel (Formerly Objectors' Counsel)

The Dialog Corporation, now known as Dialog, LLC
By:
Title:

36

Diane S. Rice
Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111


A. J. De Bartolomeo
Girard Gibbs LLP
601 California Street, Suite 1400
San Francisco, CA 94108

A/B Counsel

Charles Chalmers
Allegiance Litigation
769 Central Blvd., Suite 134
Fairfax, California 94930


C Counsel (Formerly Objectors' Counsel)


The Dialog Corporation, now known as Dialog,
LLC
By:
Title:

36

IN WITNESS THEREOF, the parties hereto have caused this Revised Settlement

Agreement to be executed by their duly authorized representatives on the ___ day of ____ 2013.

_____

Michael J. Boni
Boni & Zack LLC
15 St. Asaphs Road
Bala Cynwyd, PA  19004

_____

Diane S. Rice
Hosie Rice LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111

_____

A. J. De Bartolomeo
Girard Gibbs LLP
601 California Street, Suite 1400
San Francisco, CA 94108

A/B Counsel

_____

Charles Chalmers
Allegiance Litigation
769 Central Blvd., Suite 134
Fairfax, California 94930

C Counsel (Formerly Objectors' Counsel)

_____

The Dialog Corporation, now known as Dialog,
LLC
By: *Kevin A Norris*
Title: *Asst Sect*

_(signature)_

Dow Jones & Company, Inc.
By: Mark H. Jackson
Title: Executive Vice President & General Counsel

_(signature)_

Dow Jones Reuters Business Interactive, LLC, now
known as Factiva, LLC, a wholly owned subsidiary
of Dow Jones & Company, Inc.
By: Mark H. Jackson
Title: Executive Vice President & General Counsel

_____

EBSCO Industries, Inc.
By:  David Walker
Title: Vice President and CFO

_____

The Gale Group Inc., now known as Cengage
Learning, Inc.
By:
Title:

_____

Knight-Ridder, Inc., predecessor in interest to The
McClatchy Company
By:
Title:

_____

Knight Ridder Digital, now known as McClatchy
Intereactive West
By:
Title:

_____

Mediastream, Inc.
By:
Title:

37

A/B Counsel [and Plaintiffs' Lead Counsel for
Claims Administration]

_____

Charles Chalmers
Allegiance Litigation
769 Central Blvd., Suite 134
Fairfax, California 94930

C Counsel (Formerly Objectors' Counsel)

_____

The Dialog Corporation, now known as Dialog,
LLC
By:
Title:

_____

Dow Jones & Company, Inc.
By:
Title:

_____

Dow Jones Reuters Business Interactive, LLC, now
known as Factiva, LLC, a wholly owned subsidiary
of Dow Jones & Company, Inc.
By:
Title:

_____

EBSCO Industries, Inc.
By:  David Walker
Title: Vice President and CFO

36

Dow Jones & Company, Inc.
By:
Title:

Dow Jones Reuters Business Interactive, LLC, now
known as Factiva, LLC, a wholly owned subsidiary
of Dow Jones & Company, Inc.
By:
Title:

EBSCO Industries, Inc.
By:  David Walker
Title: Vice President and CFO

The Gale Group Inc., now known as Cengage
Learning, Inc.
By:
Title:

Knight-Ridder, Inc., predecessor-in-interest to The
McClatchy Company
By: Karole Morgan - Prager
Title: Vice-President

Knight Ridder Digital, now known as McClatchy
Interactive West
By: Karole Morgan - Prager
Title: Secretary

Mediastream, Inc.
By: Karole Morgan - Prager
Title: Vice President & Secretary

37

Newsbank, Inc.
By: *Daniel S. Jones*
Title: *President*


The New York Times Company
By:
Title:


ProQuest Company, now known as Voyager
Learning Company
By:
Title:


ProQuest Information and Learning Company, now
known as ProQuest Information and Learning LLC
By:
Title:


Reed Elsevier Inc.
By:
Title:


The Thomson Corporation, now known as The
Thomson Reuters Corporation
By:
Title:


The Copley Press, Inc.
By:
Title:

38

The Gale Group Inc., now known as Cengage
Learning, Inc.
By:
Title:

Knight-Ridder, Inc.
By:
Title:

Knight Ridder Digital
By:
Title:

Mediastream, Inc.
By:
Title:

Newsbank, Inc.
By:
Title:

The New York Times Company
By:
Title:

ProQuest Company, now known as Voyager
Learning Company
By:
Title:

37

Newsbank, Inc.
By:
Title:

The New York Times Company
By:
Title:

*Todd W Buchardt*

ProQuest Company, now known as Voyager
Learning Company
By: *Todd W. Buchardt*
Title: *Sr. Vice President*

ProQuest Information and Learning Company, now
known as ProQuest Information and Learning LLC
By:
Title:

Reed Elsevier Inc.
By:
Title:

The Thomson Corporation, now known as The
Thomson Reuters Corporation
By:
Title:

The Copley Press, Inc.
By:
Title:

Newsbank, Inc.
By:
Title:

_____

The New York Times Company
By:
Title:

_____

ProQuest Company, now known as Voyager
Learning Company
By:
Title:

_____

ProQuest Information and Learning Company, now
known as ProQuest Information and Learning LLC
By: *Kevin A. Norris*
Title: *SVP Asst Secy.*

_____

Reed Elsevier Inc.
By:
Title:

_____

The Thomson Corporation, now known as The
Thomson Reuters Corporation
By:
Title:

_____

The Copley Press, Inc.
By:
Title:

ProQuest Information and Learning Company, now
known as ProQuest Information and Learning LLC
By:
Title:

_Michael Wahl_

Reed Elsevier Inc.
By: _Michael Walsh_
Title: _Executive Vice President._

The Thomson Corporation, now known as The
Thomson Reuters Corporation
By:
Title:

The Copley Press, Inc.
By:
Title:

West Publishing Corporation d/b/a West Group
By:
Title:

38

ProQuest Information and Learning Company, now
known as ProQuest Information and Learning LLC
By:
Title:

Reed Elsevier Inc.
By:
Title:

*Ed-d A Ld*   11/12/13
The Thomson Corporation, now known as The
Thomson Reuters Corporation
By: GONARD A FRIEDLAND
Title: GENERAL COUNSEL, Legal

The Copley Press, Inc.
By:
Title:

*Gd-d A Fiedld*   11/12/13
West Publishing Corporation d/b/a West Group
By: GONARD A FRIEDLAND
Title: General Counsel. Legal

38

---

ProQuest Information and Learning Company, now
known as ProQuest Information and Learning LLC
By:
Title:

---

Reed Elsevier Inc.
By:
Title:

---

The Thomson Corporation, now known as The
Thomson Reuters Corporation
By:
Title:

---

The Copley Press, Inc.
By: *HAROLD W. FUSON, JR*
Title: *Chairman*

---

West Publishing Corporation d/b/a West Group
By:
Title:

38

# Exhibit A

*In re Literary Works in Electronic Databases Copyright Litigation –*
*Revised Settlement Agreement Exhibit A: PARTICIPATING PUBLISHERS*

| | |
|---|---|
| 1 | Advance Publications, Inc. |
| 2 | ALM Media, LLC |
| 3 | Bloomberg L.P. |
| 4 | Capital City Press, L.L.C. |
| 5 | Daily News, L.P. |
| 6 | Dow Jones & Company, Inc. |
| 7 | Forbes |
| 8 | Freedom Communications, Inc. |
| 9 | Gannett Co., Inc. |
| 10 | Gruner + Jahr USA Publishing/Gruner + Jahr USA Group, Inc. |
| 11 | Hearst Corporation |
| 12 | Herald Media Holdings, Inc. |
| 13 | Journal Sentinel, Inc. |
| 14 | Landmark Media Enterprises, L.L.C. |
| 15 | Madison Newspapers, Inc. |
| 16 | New Times Media, LLC |
| 17 | North Jersey Media Group/Bergen Record Corp./The Record |
| 18 | NYP Holdings, Inc. |
| 19 | Press-Enterprise Company |
| 20 | TEG New Jersey, LLC (f/k/a Journal of Commerce, Inc.) |
| 21 | The Atlantic Monthly Group, Inc. |
| 22 | The Copley Press, Inc. |
| 23 | The Dallas Morning News, Inc. |
| 24 | The Economist Intelligence Unit Limited |
| 25 | The Economist Newspaper Limited |
| 26 | The McClatchy Company |
| 27 | The National Journal Group, Inc. |
| 28 | The New York Times Company |
| 29 | The Providence Journal Company |
| 30 | The San Diego Union-Tribune, L.L.C |
| 31 | The Washington Post Company (for Newsweek) |
| 32 | Time Inc. |
| 33 | Tribune Publishing Company, LLC |
| 34 | U.S. News & World Report, L.P. |
| 35 | WP Company LLC d/b/a The Washington Post |

# Exhibit B

## EXHIBIT B - CLAIMS ADMINISTRATION MEMORANDUM

This claims administration process pertains to Subject Works authored in U.S. publications. Subject Works authored abroad may require some different or further information and/or process, to be mutually agreed by the parties. Terms used herein shall have the same meaning as in the Revised Settlement Agreement. All parties agree to work in good faith to implement the Revised Settlement Agreement and this Claims Administration Memorandum ("CAM").

1.    The Claim Forms

    a.    Claims were submitted to the Claims Administrator, pursuant to the original Settlement Agreement, in or about 2005, in either electronic or paper form.

    b.    The Claims Administrator, working with Plaintiffs, designed the online and paper claim forms in a manner designed to make the claims making process as simple and convenient for the Claimant as practicable. The design of the claim forms was subject to the Defense Group's approval, which was granted.

2.    Submission by Claimant

    a.    Each Claimant was directed to submit a single claim form for all of his or her claimed Subject Works. Claimants were required to provide the following information to the extent reasonably possible:

        i.    Name and social security number of Claimant.

        ii.    For each Subject Work claimed.

            (1)    Title of Subject Work used on first publication (as accurately as possible) or specific subject matter of the Subject Work sufficient to permit identification of specific articles;

            (2)    Name and publication date of newspaper or magazine publishing the Subject Work;

            (3)    If registration was claimed, registration number and date, which the Claims Administrator verified using publicly available records;

            (4)    Amount paid (if any) to the Claimant, by the publication, for the Subject Work (and attaching supporting material if conveniently available);

            (5)    For Subject Works authored in the United States,[1] with respect to each Subject Work claimed, a statement that the Claimant was not an

---

[1]   For Subject Works first published in the United States, it will be the burden of the Participating Publisher or Supplemental Participating Publisher to show that they had necessary rights to reproduce

1

employee or working under a "work for hire" agreement, but rather was working on a freelance basis;

(6)      If the Claimant ever was an employee of that publisher, the approximate dates;

(7)      Statement either that the Claimant has never had a written agreement granting electronic rights to that publisher with respect to any claimed Subject Works or, if he or she has ever signed such an electronic rights agreement with that publisher, providing a copy of such agreement (or stating the date of such agreement);

(8)      Statement that no claim is being submitted for other versions, revisions, or variants of the Subject Work prepared without the Claimant's editorial assistance or for which the Claimant did not receive additional payment; and

(9)      If known, databases on which Subject Work has appeared.

iii.      A certification that, to the best of the Claimant's knowledge, information and belief, any and all information provided by the Claimant in connection with the claim is accurate.

c.      The inability by Claimants to document their claims after a reasonable search for the documentation or to identify on which databases their Subject Works appeared shall not necessarily render such Claimants ineligible to receive his or her full Settlement Payment under the Plan of Allocation; claim allowance depends on sections 3-5 below.

3.      <u>Initial Claim Computation and Evaluation by Claims Administrator</u>

a.      The Claims Administrator is responsible for computing an initial per claim award per Subject Work, based on information provided.  Before making this computation, the Claims Administrator will (i) send a notice to those Claimants whose claims have been deemed incomplete and who did not previously receive such a notice in connection with the original settlement; and (ii) send a notice to those Claimants whose claims have been deemed ineligible in full or part because one or more works on which their claims are based do not appear to have been reproduced, displayed, or distributed by a Database Defendant or subsidiary, affiliate, or licensee thereof.  Such Claimants will be given an opportunity to respond to the Claims Administrator, with notice to A-B-C Counsel, and cure the issue.  After all such responses are evaluated, and works at issue reclassified as Subject Works if so warranted in the judgment of the Claims Administrator and/or A-B-C Counsel, the Claims Administrator will compute the initial per claim award per Subject Work.  In making those computations:

---

Subject Works in electronic databases.  For Subject Works first published abroad, it will be the burden of the claimant to show that the publisher of the collective work lacked sufficient rights to license the work to the defendant electronic database(s) for distribution thereby.

i.      Eligibility for "registered" categories requires registration certificate or printout reflecting registration.  For Category B Subject Works, a certificate or application dated before December 31, 2002, and, for Category A Subject Works, a certificate or application dated either (a) before publication or first infringement, or not more than three months after publication (Claims Administrator can search online and use the Library of Congress database to establish registration); or, (b) for works available on Highbeam or Amazon.com, prior to the date such work was delivered to Highbeam or Amazon.com, according to a schedule of dates of availability that has been delivered to the Claims Administrator;

ii.     Eligibility for and calculation of awards for Subject Works requires Claims Administrator to ascertain that each Subject Work:

       (1)     Has been reproduced, displayed, adopted, licensed, sold and/or distributed by a Defense Group member;[2]

       (2)     Is not self-evidently excluded from the class definition and settlement agreement (i.e., software); and

       (3)     Was published either after January 1, 1995; between January 1, 1985 and December 31, 1994; prior to January 1, 1985; or prior to 1978, in order to determine any reduction in payments due to the time period in which the Subject Work was created.

iii.    A claim submitted by a Claimant will be eligible to be processed and assessed by the Claims Administrator if it identifies (i) a specific identifiable publication, (ii) a particular date or dates (although precision is not required), and (iii) title or subject matter sufficient to permit identification of particular Subject Works to which the Claimant is referring.  By way of example:

       -Four articles by Jack Smith in Newsweek in 1985 on soccer, Uruguay, Clifford Irving, and the Amazon, suffices to comprise four claims that can be processed and assessed;

       -Articles in Sports Illustrated from 1982-1989, or Articles in various publications during the 1980s, fail to provide sufficient information to be processed, and will be disallowed.

iv.     The Claims Administrator will implement and facilitate compliance with paragraph 4.f of the Revised Settlement Agreement by appropriate measures aimed at identifying and eliminating multiple claims for any one work (where, for

---

[2]   The Claims Administrator has had and will have access to lists (including electronic, searchable lists) of publications that have been online and the pertinent dates.  If the relevant issue of the publication was online, the Subject Work is presumed to have been online, subject to the demonstration by the publisher (*see* Section 4) that the Subject Work (or category of Subject Works of which the Subject Work is a part) never was part of the text licensed or distributed online, or was not published by it at all (*i.e.*, did not exist).

example, the same work was syndicated or republished in multiple newspapers and/or in databases such as Highbeam).

> (1)     Pursuant to paragraph 3.f of the Revised Settlement Agreement, the Claims Administrator will identify Subject Works it can objectively determine to be "pure duplicates" through computer programming queries, e.g., identical name of Subject Work, identical date of publication, identical name of publication, *and* identical amount of payment.  The Claims Administrator will treat claimed works that it identifies as duplicates as a single claim and assign it to the print publisher that first published the work.

> (2)     Among its activities used to enforce paragraph 3.f, the Claims Administrator will also identify through computer programming queries all sets of Subject Works that have the identical name and were published within 2 weeks of each other in different publications.  The Claims Administrator will provide the results of the 2-week queries to all parties.  For each such set of works, the Claims Administrator will classify the one first to be published as eligible for compensation (so long as the work meets the eligibility requirements in all other respects) and reject all the others as ineligible.  (A columnist's identically titled columns with different text, in a commissioning publication, are not thereby duplicates within the meaning of paragraph 3.f; but the republication of those columns in different publications would be.)

> (3)     Upon the request of the Defense Group, and to assist the Defense Group in presenting additional assertions of invalidity under paragraph 3.f of the Revised Settlement Agreement during the review and objection process described in section 4 below, the Claims Administrator will make reasonable information available to the Defense Group, obtainable through computer programming queries, concerning relevant fields of the claims database (*e.g.*, title of work, date, publication, claimant).  The provision of information about a work pursuant to this subsection (3) will not by itself result in the classification of that work as invalid or ineligible.

v.     When a publisher to which a claim has been incorrectly assigned advises the Claim Administrator that it is not the Originating Publisher and identifies the correct Originating Publisher, the Claim Administrator shall reassign the claim in its discretion consistent with the information available to it.

vi.     Based where available on the contact information provided to it by the Defense Group, the Claims Administrator will provide to each publisher of claimed works a report, likely in electronic form, identifying, with such information as it has, the claims assigned to that publisher, for each of that publisher's publications, so as to enable each publisher (and each publication) to undertake the review identified below in section 4.  Such reports shall also be provided to A-B-C Plaintiffs' counsel and to counsel for the Database Defendants, at their request.

4.    Review by Publishers or Databases

    a.    Each Participating Publisher and Supplemental Preliminary Participating Publisher will have 60 days from being actually provided with its preliminary list of claims – or, if the publisher has received more than 150 claims, 75 days – to object to the inclusion of any or all Subject Works listed in a given claim, by certifying that any material fact submitted by the Claimant is false (*e.g.*, the claimed Subject Work was never published, is not a Subject Work under the Revised Settlement Agreement, was written for $20, not $250; the Claimant was an employee; the Subject Work is subject to an applicable written grant of electronic rights, or that the work is otherwise ineligible).

    b.    Objections should be supported by demonstrative evidence that the claim is invalid, if such evidence is in the publisher's possession, custody or control at the time of the objection, but it is recognized that such evidence may not exist or be obtained with reasonable effort, and other evidence (*e.g.*, declarations by employees or officers of the publication) may suffice. Evidence may pertain to the publisher's general policies and practices, and does not need to specifically gainsay facts contained in the claim.

By way of example:

    -A publisher can support an objection to a claim with a copy of a written grant of electronic rights from the Claimant covering the Subject Work in question. Such documentation would lead to rejection of the claim, unless the Claimant can successfully cast doubt on the authenticity of the grant.

    -A publisher can support an objection to a claim with a certification or other evidence that a check of its records reflected no such Subject Work had been published by that publication, or that that Claimant did not author the work. Such documentation would lead to rejection of the claim, unless the Claimant can successfully cast doubt on the certification and/or evidence.

    -A publisher can support an objection to a Subject Work it believes was never carried on a defendant database with demonstrative evidence or, if it does not exist or cannot be located with reasonable effort, a certification, that it routinely followed a policy of submitting to a database only works by staff writers or articles for which it had in hand written grants of electronic rights, and that freelance works without written rights were routinely excluded from uploading to the database. Such documentation would lead to rejection of the claim, unless the Subject Work was in fact on a defendant database or the Claimant can otherwise successfully cast doubt on the certification and/or evidence.

    c.    The Claims Administrator shall notify the Database Defendants of all claims which appear not to have been reviewed by Participating or Supplemental Participating Publishers. Once the Database Defendants are notified by the Claims Administrator that no objection was obtained from a publisher with respect to claims presented to that publisher, the defendant database will have up to 45 days – or, if a database has more than 1000 claims to review, up to 60 days – to object to any such claims. Such objections

should be supported by demonstrative evidence to the extent reasonably available, or, if not, certifications, establishing that such articles were not distributed, displayed, or transmitted by such database, or that the work is otherwise ineligible.

    i.    Claims that appear to have been misaddressed or misdirected (*e.g.*, to the wrong publication, the wrong publisher, an inaccurate email and/or physical address, or an incorrect contact person) will be re-submitted to the correct publication and/or publisher with proper address, and the deadlines will run from actual receipt

    ii.    Claims not objected to in a timely manner, or not found invalid on their face by the Claims Administrator, will be paid pursuant to section 7 below.

    iii.    Contested claims will be put aside for resolution (*see* section 5 below).

5.    <u>Dispute Resolution</u>

    a.    Claimants submitting a disallowed claim will receive (if they have not already received) a notice identifying the reason(s) for the disallowance, and will be afforded an opportunity to cure any deficiencies so as to render the claim valid unless they were afforded such an opportunity in 2005-2006.

    b.    The parties will attempt informally, on a rolling basis, to resolve all disputed claims.

    c.    If the parties are unable to resolve all disputed claims, the remaining disputed claims will be resolved by summary binding arbitration before a United States Magistrate Judge from the Southern District of New York assigned by the Court who agrees to do so, or, a magistrate is not available, to an arbitrator the parties jointly agree to use. The arbitrations will be set at the earliest possible date after the end of the claims period, and shall be conducted sequentially on one day (or consecutive days) in New York City. The Claimant and parties may participate by telephone.

6.    <u>Final Report</u>

The Claims Administrator will prepare a Final Report for distribution pursuant to paragraph 2.c. of the Revised Settlement Agreement. The Final Report will list, for each Claimant whose claim has been allowed in full or part, the Subject Works on which the person's claim is based that have been deemed valid and the works deemed invalid (if any), the original publication of each work, the amount per Subject Work under the Plan of Allocation, and the total Settlement Payment. The Final Report will also list the Claimant whose claims have been disallowed in full.

7.    <u>Payment of Claims</u>

    a.    Upon receipt of all outstanding amounts due pursuant to the terms of the Revised Settlement Agreement according to the procedures set forth in paragraph 2.c of that agreement, the Claims Administrator shall prepare a single check for each claimant for

the total amount due that Claimant as described in the Final Report and any additional amount due under the Revised Settlement Agreement.

b.      The Claims Administrator shall mail each check by first class mail to the address provided by the Claimant in the claim form.  In the event that checks are returned as undeliverable or are not cashed or deposited after 90 days ("Unclaimed Funds"), after one good faith effort to resend the check via publicly available information, and subject to Court approval, the Claims Administrator shall disburse any Unclaimed Funds pursuant to a *cy pres* motion made by plaintiffs.  The parties will agree to the proposed recipient of the award.

31416225v15

Exhibit C

## Agreement For Claims Administration Cost Allocation

This Agreement ("Agreement") is between Girard Gibbs, LLP, Boni & Zack, LLC, Hosie Rice LLP and Gary S. Fergus ("A/B Counsel") on the one hand, and Charles Chalmers ("C Counsel") as a representative of the C Claims, on the other hand (collectively the "Parties"). The Agreement contemplates that a Revised Settlement Agreement ("RSA") will be reached and presented to the Court for approval. The Agreement assigns responsibility for the payment of (1) unpaid costs of settlement administration incurred under the original settlement, and; (2) incurred and anticipated costs of settlement administration under the revised settlement.

The Parties agree as follows:

1.      The parties to this agreement have attempted to identify all unpaid costs incurred under the original settlement, additional costs incurred during the negotiation of the proposed Revised Settlement Agreement, and estimates for anticipated costs to complete administration of the revised settlement. These are listed on the attached Exhibit 1. The proposed RSA makes available the sum of $517,000 (the "Initial Interest") as part of the "Additional Contribution" made by the Database Defendants. (Revised Settlement Agreement, Sect. 3.b.) Any part of the $517,000 that is not used to pay costs of administration will be paid as additional compensation to the C Claims under the Revised Settlement. (Revised Settlement Agreement, Sect. 4.c.) There is a potential for dispute between the parties to this Agreement as to the proper allocation of responsibility for the costs budgeted on Exhibit 1, and this Agreement is intended to resolve all such potential disputes to facilitate efficient and timely completion of the RSA upon approval.

2.      The estimates for the work to be done by GCG set forth on Exhibit 1 are based on A/B counsel's communications with GCG and are consistent with estimates made by GCG.  The amounts listed in Items 1, 2, 3, 4, 5, 6, and 7 on Exhibit 1 are informational only.

3.      The amount of $315,000 of the Initial Interest shall be allocated to pay items 1, 2, 3, 4, 5, 6, 7, 8 and 50% of 9 on Exhibit 1. To the extent that this sum is not sufficient to pay those items, the excess required shall be paid one-half (1/2) from the remaining $202,000 of the Initial Interest and one-half (1/2) by A/B Counsel from the amounts awarded to them for attorneys' fees and costs in this matter by the Court.

4.      If payment of items 1, 2, 3, 4, 5, 6, 7, 8 and 50% of 9 exhausts the $202,000 under paragraph 3, further required payments shall be paid five-sixths (5/6) by A/B Counsel and one-sixth (1/6) by C Counsel, each from the amounts awarded to them for attorneys' fees and costs in this matter by the Court.

5.      To the extent that a category or item of administrative expense, either past or future, is identified and which is not clearly covered by this Agreement, the parties shall attempt to reach an

agreement regarding its allocation which is consistent with this Agreement. In the event that is not successful, it shall be resolved pursuant to paragraph 9 herein.

6.     To the extent that item 7 is not spent by three months after the payment of claims by the GCG, it shall be distributed one half (50%) to C Counsel and one half (50%) to A/B Counsel.

7.     The remaining 50% of Item 9 on Exhibit 1 and Item 10 on Exhibit 1 shall be paid by A/B Counsel from the amounts awarded to them for attorneys' fees and costs in this matter by the Court.

8.     The work contemplated to be done on Exhibit 1 expressly does not call for GCG to respond to class questions.  The responsibility for responding to class questions falls to A/B Counsel and to C Counsel for their respective subclass groups.  Where it cannot be determined what category (A, B or C) work for which a class member has questions, those questions will be allocated among A/B Counsel and C Counsel.

9.     Any disputes about the interpretation or application of this Agreement shall be decided by the Court in this matter and the decision of the Court shall be final and without any right of appeal.

Dated:_____        Girard Gibbs LLP

                             By_____
                                  A.J. De Bartolomeo
                                  Partner


Dated: May 10 2013            Hosie Rice LLP

                             By _____
                                  Diane Rice
                                  Partner


Dated:_____         Boni & Zack LLC


                             By_____
                                  Michael Boni
                                  Partner


Dated:_____         Fergus, a law office


                             By_____
                                  Gary Fergus


Dated:_____         Allegiance Litigation


                             _____
                                  Charles Chalmers

Page **2** of **2**

agreement regarding its allocation which is consistent with this Agreement. In the event that is not successful, it shall be resolved pursuant to paragraph 9 herein.

6.     To the extent that item 7 is not spent by three months after the payment of claims by the GCG, it shall be distributed one half (50%) to C Counsel and one half (50%) to A/B Counsel.

7.     The remaining 50% of Item 9 on Exhibit 1 and Item 10 on Exhibit 1 shall be paid by A/B Counsel from the amounts awarded to them for attorneys' fees and costs in this matter by the Court.

8.     The work contemplated to be done on Exhibit 1 expressly does not call for GCG to respond to class questions.  The responsibility for responding to class questions falls to A/B Counsel and to C Counsel for their respective subclass groups.  Where it cannot be determined what category (A, B or C) work for which a class member has questions, those questions will be allocated among A/B Counsel and C Counsel.

9.     Any disputes about the interpretation or application of this Agreement shall be decided by the Court in this matter and the decision of the Court shall be final and without any right of appeal.

Dated: _9 May 2013_

Girard Gibbs LLP

By_____
        A.J. De Bartolomeo
        Partner

Dated:_____

Hosie Rice LLP

By_____
        Diane Rice
        Partner

Dated:_____

Boni & Zack LLC

By_____
        Michael Boni
        Partner

Dated:_____

Fergus, a law office

By_____
        Gary Fergus

Dated:_____

Allegiance Litigation

_____
        Charles Chalmers

Page **2** of **2**

agreement regarding its allocation which is consistent with this Agreement. In the event that is not successful, it shall be resolved pursuant to paragraph 9 herein.

6.    To the extent that item 7 is not spent by three months after the payment of claims by the GCG, it shall be distributed one half (50%) to C Counsel and one half (50%) to A/B Counsel.

7.    The remaining 50% of Item 9 on Exhibit 1 and Item 10 on Exhibit 1 shall be paid by A/B Counsel from the amounts awarded to them for attorneys' fees and costs in this matter by the Court.

8.    The work contemplated to be done on Exhibit 1 expressly does not call for GCG to respond to class questions. The responsibility for responding to class questions falls to A/B Counsel and to C Counsel for their respective subclass groups. Where it cannot be determined what category (A, B or C) work for which a class member has questions, those questions will be allocated among A/B Counsel and C Counsel.

9.    Any disputes about the interpretation or application of this Agreement shall be decided by the Court in this matter and the decision of the Court shall be final and without any right of appeal.

Dated:_____

Girard Gibbs LLP
By_____
    A.J. De Bartolomeo
    Partner

Dated:_____

Hosie Rice LLP

By_____
    Diane Rice
    Partner

Dated: 5/10/13

Boni & Zack LLC

By_____
    Michael Boni
    Partner

Dated:_____

Fergus, a law office

By_____
    Gary Fergus

Dated:_____

Allegiance Litigation

_____
    Charles Chalmers

agreement regarding its allocation which is consistent with this Agreement. In the event that is not successful, it shall be resolved pursuant to paragraph 9 herein.

6.      To the extent that item 7 is not spent by three months after the payment of claims by the GCG, it shall be distributed one half (50%) to C Counsel and one half (50%) to A/B Counsel.

7.      The remaining 50% of Item 9 on Exhibit 1 and Item10 on Exhibit 1 shall be paid by A/B Counsel from the amounts awarded to them for attorneys' fees and costs in this matter by the Court.

8.      The work contemplated to be done on Exhibit 1 expressly does not call for GCG to respond to class questions. The responsibility for responding to class questions falls to A/B Counsel and to C Counsel for their respective subclass groups. Where it cannot be determined what category (A, B or C) work for which a class member has questions, those questions will be allocated among A/B Counsel and C Counsel.

9       Any disputes about the interpretation or application of this Agreement shall be decided by the Court in this matter and the decision of the Court shall be final and without any right of appeal.

Dated:_____          Girard Gibbs LLP
                                By_____
                                    A.J. De Bartolomeo
                                    Partner

Dated:_____          Hosie Rice LLP

                                By_____
                                    Diane Rice
                                    Partner

Dated:_____          Boni & Zack LLC

                                By_____
                                    Michael Boni
                                    Partner

Dated: 5/9/2013                 Fergus, a law office

                                By_____
                                    Gary Fergus

                                Allegiance Litigation

                                    Charles Chalmers

Dated:_____

| EXHIBIT 1 | | |
|---|---|---|
| **In re Literary Works Class Action Settlement Expense Budget May 8, 2013** | | |
| **Description** | **Expense** | **Notes** |
| 1 Report of Every Deficient and/or ineligible work and Why | ($10,000.00) | To be paid to GCG |
| 2 IVR Program Record and Implement and distribution of results to Class Counsel | ($30,000.00) | To be paid to GCG |
| 3 Modify Wesbsite for New Information Including Programming | ($20,000.00) | To be paid to GCG |
| 4 New Notice to 75000 addresses in GCG Database | ($100,000.00) | To be paid to GCG |
| 5 GCG to Complete Revise Settlement Claims Administration and Distribution Work Including Duplicate work and Explanation of Deficiencies | ($125,000.00) | To be Paid to GCG |
| 6 b(5) any escrow fees paid to the Depository Bank and payments to an independent third party for services and expenses in connection with administration of the Settlement Funds, including the preparation and mailing of tax forms and tax returns; | ($5,000.00) | To be paid to QSF Accountant 2012 and 2013 |
| 7 Claims Dispute Resolution Arbitrator (reserve) | ($75,000.00) | If court will assign magistrate to resolve disputes then this item gets eliminated |
| 8 Claims Dispute Resolution (contingency) | ($25,000.00) | Reserve from QSF Earnings |
| 9 Feinberg Fee Total | ($150,000.00) | To be paid to Feniberg Balance owed $75000 included in expense application amount of $595,847.29 for Feinberg fee which is a total payment to Fineberg of $150,000 |
| 10 GCG Claims Administration and Publication Notice Expense Pre-2006 | ($222,790.24) | To be paid to GCG out A/B Fee Award |
| 11 **Total** | ($762,790.24) | |